**PASHKO, Plaintiff, v. PASHKO, Defendant; HAAS, New Defendant.**

Common Pleas County, Cuyahoga County.

No. 621612.   Decided October 13, 1951.

Jack A. Feingold, Morris Morgenstern, Cleveland, for plaintiff, Orpha Jean Pashko.
Sherman D. Cahn, Cleveland, for defendant, James Pashko.
Myron D. Melitz, Cleveland, for defendant, Florence Haas.

## OPINION

By KOVACHY, J.

In this matter the plaintiff filed an alimony action against her husband, James Pashko, and in her prayer, in addition to asking for the usual relief asks "that during the pendency of this action the defendant, Florence Haas, be restrained from visiting, conversing socially, associating, or meeting and being with the defendant, James Pashko; that she be restrained from interfering with the marriage relationship——;——that the defendant, James Pashko, be temporarily—restrained from visiting, conversing socially, associating, or meeting and being with the defendant, Florence Haas:—"

In her Amended Petition with respect of Florence Haas she claims that the defendant, Florence Haas, "has enticed him (her husband) by using various designs and wiles to have the defendant leave her and in trying to induce her husband to transfer his affections to her" and "that the defendant (her husband) and said Florence Haas openly, notoriously and brazenly have been seen in each other's company and have made no pretense of their relationship and friendship for each other and have flagrantly displayed their affections for each other in public places where they could easily be seen by the general public and by others who are acquainted with both plaintiff and the defendant." Further "That said defendant, Florence Haas, maliciously and wrongfully used her design

upon the plaintiff's husband for the purpose of destroying the love and affection that her husband had for her and for the purpose of bringing about the separation of the plaintiff from her husband."

With respect of her husband the plaintiff "alleges that prior to the new defendant, Florence Haas, interfering with their lives that she and her husband enjoyed happiness, peace and contentment and that her husband treated her with great kindness, affection and tenderness during the greater portion of the time they lived together" and "that until such time as the defendant, Florence Haas, enticed her husband by various means and methods, that she and the defendant were a normal, happy husband and wife, living a normal life in the community, and they enjoyed the respect and companionship of their friends and relatives, but ever since the defendant, Florence Haas, has interfered with their marriage and has by undue influence and various wiles and means enticed her husband, he has been dissatisfied with his marriage and has left her and engaged in the activities that have hereinbefore been related."

The plaintiff filed a written "Motion For a Temporary Restraining Order" with notice of a hearing upon the same at a time and court certain and obtained personal service upon each defendant. At an oral hearing upon the same each defendant demurred to the granting of a temporary restraining order on the ground,—

1. That the amended petition does not state a cause of action for same and,—

2. That the Court has no equitable jurisdiction to grant the relief prayed for.

Defendant, Florence Haas, in addition, claims that there is a misjoinder of parties defendant.

The defendants for their demurrer rely heavily upon the rulings of the Supreme Court of Ohio in **Snedaker v. King, 111 Oh St 225.** While that celebrated case deals with facts which are quite similar to the facts in this case there are important distinguishing features between them. The Snedaker case was an original action in a Court of Equity in which the plaintiff sought a **permanent** injunction. This case is an alimony action in a court of Domestic Relations in which the plaintiff seeks a **temporary** restraining order. To evaluate the efficacy and propriety of the request made herein it is necessary to understand the basic philosophy of the law in Divorce and Alimony matters.

1. **Marriage is a civil contract between husband and wife considered by law a status in which the state has an interest**

and over which it should exercise watchful vigilance to safeguard its sanctity and to prevent its disruption, if possible.

9 R. C. L. 252 and 17 Am. Jur. 154:—

"The public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation."

Maynard v. Hill, 125 U. S., 190:—

"Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress."

Allen v. Allen, 73 Conn. 54, Chief Justice Andrews said on page 55:

"Marriage is that ceremony or process by which the relationship of husband and wife is constituted. The consent of the parties is everywhere deemed an essential condition to the forming of this relation. To this extent it is a contract. But when the relation is constituted then all its incidents, as well as the rights and duties of the parties resulting from the relation, are absolutely fixed by law. Hence, after a marriage is entered into the relation becomes a status, and is no longer one resting merely on contract."

Also see:

27 C. J. Sec. 527, Alexander v. Alexander, 140 Ind. 555.

2. The historic purposes of the divorce and alimony laws is to serve the best interests of society by protecting and maintaining the family.

Dennis v. Dennis, 68 Conn., 186, Chief Justice Andrews says the following:

"The State desires good citizens. It regulates divorce procedure in its own interest.——the State does not favor divorces:——The State allows divorces, not as a punishment to the offending party nor as a favor to the innocent party, but because the State believes its own prosperity will thereby be promoted."

"Marriage and Divorce" by Keezer, page 299:

"As pointed out in the chapter on marriage the state has the greatest interest in promoting healthy family life. It has an even greater interest in maintaining the family than in creating it. It has, therefore, hedged the home about with a system of divorce laws, looking to the permanency

of the marital relation. Divorce is prima facie prejudicial to the public interest."

**Fessenden v. Fessenden, 32 Oh Ap, 17.**

"Syl. 6. Suit for divorce is of importance not only to the parties to the suit, but to society in general."

**3. The state is a party to every divorce and alimony proceeding and in Ohio where no provision by law is made for actual representation, the court represents the state.**

9 R. C. L. 253:

"It has been said by the courts and eminent writers on the subject that such an action is really a triangular proceeding to which the husband and the wife and the state are parties."

9 R. C. L. 409:

"In England and in some jurisdictions in this country provision is made by statute for intervention on the part of the state's attorney or other official representative of the state. And even where there is no statute authorizing the appearance of such an official, it is recognized that the duty of protecting the public interests is in the care of the tribunal before which the proceedings are pending, which, therefore, will be astute in enforcing the policy and principles of the law."

Bishop v. Bishop, 162 S. W. 2nd 332, syllabus 10:

"The state, or the public is a 'party' to a divorce action, and has its day in court when the action is tried."

Young v. Young, 17 Minnesota, 186:

"The proper regulation and control of the marriage relation is of so much importance to society, the well being of the community is so far involved in the permanence of this relation, that the state, through its courts, exercises a peculiar guardianship over marriage and divorce."

Rinehart v. Rinehart, 91 New Jersey Equity, p. 354:

Syl. 2. "In divorce cases the state is a party whose interest the court at all times will save and protect;"

See: Alexander v. Alexander, 140 Ind. 555, 9 R. C. L., page 250; Allen v. Allen, 73 Conn. 54, 344 Missouri, 771; Winning v. Winning, 366 Ill. 57, syl. 2, 55 C. J. Sec. 808; Hopping v. Hopping, 233, Iowa, 996, 205 Iowa, 395; Giddings v. Giddings, 114 Pac. 2nd, 1009; **Snedaker v. King, 111 Oh St, 248.**

**4. It is the duty of the court to use every proper means to reconcile parties seeking divorce or separation.**

The State of Nevada ex rel Leonard B. Fowler etc. v. Gladys M. Moore, etc., et al, 46 Nevada, 65.

"The state, or sovereign, is deeply concerned in maintaining the integrity and permanence of the marriage relation."

"Divorce and Separation" by Nelson, Volume 1, page 14:—
"The state would like to see a reconciliation and adjustment of differences, if possible."

Page 17:

"Public policy in the interest of good morals and the stability of society requires the discouragement of divorce and encouragement of reconciliation."

Pilliner v. Pilliner, 133 P. 2d. 735, syllabus 9:

"The law favors reconciliation."

55 C. J., Sec. 808:

"Marriage is favored by the law and the public policy is to foster and protect marriage, to make it a permanent and public institution, to encourage the parties to live together and to prevent separation."

See Giddings v. Giddings, 114 Pac. 2d 1009.

5. **The six week waiting period before a divorce or alimony action can be heard in Ohio is intended as a cooling off period for the parties and the time for affecting reconciliation if possible.**

Sec. 8003-10 GC.

6. **A wife by law is entitled to the affection, society, co-operation and aid of her husband in all conjugal relations.**

Flandermeyer v. Cooper, 85 Oh St, 327:

Syl. 1. "Husband and wife are entitled to the affection, society, co-operation and aid of each other in every conjugal relation, and either may maintain an action for damages against any one who wrongfully and maliciously interferes with the marital relationship and thereby deprives one of the society, affection and consortium of the other."

Henley v. Rockett, 243 Alabama, 172:

Syl. 1. " 'Marriage' is contractual, and a covenant relation, resulting in the marital union, in which each spouse has the unquestioned right to all the fealties on the part of the other, known as 'consortium.' "

Syl. 2. "The loss by husband or wife of rights to the person, affection, society, assistance, service, aid, fellowship, companionship, company, co-operation, or comfort of the other constitutes a loss of 'consortium.' "

See: Biganoette v. Paulet, 134 Mass. 123; **Snedaker v. King, 111 Oh St 248.**

The court in this case has complete jurisdiction over the marital status of the husband and wife involved. It has a duty to safeguard and preserve such status if possible during the pendency of the action in order to allow all forces working toward a reconciliation to operate with the view of maintaining the family relation.

According to the plaintiff, one, Florence Haas, is wrongfully and maliciously bent on disrupting her conjugal relations with her husband. She is asking this court to restrain Miss Haas from so doing during the pendency of her action. Now it is obvious that if Florence Haas has her way that the plaintiff will suffer irreparable injury in her relationship with her husband. It is also manifest that if Florence Haas is permitted to pursue her designs unhampered the chances for a reconciliation of this couple is greatly lessened and the beneficial purpose of a waiting period between the filing and hearing of the cause most probably thwarted. The matter therefore resolves itself into the following question: Does a Common Pleas Court acting in Domestic Relations have the Power which it should exercise to halt a brazen and designing third person from wrongfully, maliciously and notoriously interfering with the marital rights of the plaintiff during the pendency of her alimony action or must it proclaim its impotence to control such a situation and supinely permit the flagrant violation of substantial rights to continue unabated?

The Supreme Court of Ohio **In re Cattel, 146 Oh St 112,** recognizes the authority of a court of Common Pleas to issue restraining orders during the pendency of an action for divorce and alimony when "great or irreparable injury" may be caused the plaintiff, Paragraph 1 of the syllabus reads as follows:

"In an action for divorce and alimony a Court of Common Pleas or a judge thereof, in addition to the authority granted by §11996 GC is authorized by §11876 GC, to issue a temporary restraining order or injunction when it appears by the petition that plaintiff is entitled to the relief demanded and such relief or any part of it consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce great or irreparable injury to the plaintiff."

In Stark v. Hamilton, 149 Georgia, 227, the Supreme Court of Georgia sanctioned a restraining order of similar tenor to the one herein prayed for. Paragraph 1 of the syllabus reads as follows:

"Where a man has debauched a minor girl and induced her to abandon her parental abode and live with him in a state of adultery and fornication, and persists in a continuance of such conduct, equity will afford a remedy by injunction, and to that end, in a suit by the father, will enjoin the man from associating and communicating with the girl, either by writing, telephoning, or telegraphing, personally or through the aid or agency of any other person."

In Vanderbilt v. Mitchell, 72 New Jersey Equity 910, 919, it was said:

"If it appeared in this case that only the complainant's status and personal rights were thus threatened or thus invaded by the action of the defendants and by the filing of the false certificate, we should hold, and without hesitation, that an individual has rights, other than property rights, which he can enforce in a court of equity and which a court of equity will enforce against invasion, and we should declare that the complainant was entitled to relief."

27 American Jurisprudence, 121 Section 520:

One spouse may enjoin a third person from alienating the affections of the other spouse in a proper case."

Hall v. Smith, 140 New York Supplement, p. 796:

"The motion which has been made in this action requires the determination of the question whether in such an action an injunction order may, and should be, made to restrain the defendant pendente lite from the continuance of those acts which lie at the foundation of the cause of action. While the question is most unusual in respect of the power of the court to grant such relief, I have no doubt whatever that in a proper case the right to grant such an injunction resides in the court of equity, and that it is not unduly extending the jurisdiction or cognizance of the court to restrain the impending, threatened or continued commission of such acts as are violative of the rights of a plaintiff in a suit of this character."

Sec. 8003-21 GC:

"—In any matter concerning domestic relations, the Court of Common Pleas shall not be deemed to be deprived of its full equity powers and jurisdiction."

In 146 Oh St, on page 119, Judge Turner has the following to say:

"Where a procedural power, such as the power to issue an injunction, is conferred upon the Court of Common Pleas, it is the duty of such court to exercise such procedural power in any appropriate case."

From a consideration of the authorities and the duties devolving upon a court of domestic relation with respect to marriage and the family, this court believes that if the facts set forth in the Amended Petition be true, that this is then an appropriate case in which to exercise its equity powers to restrain the third party pendente lite from continuing her deliberate deprédation upon the marriage of the plaintiff.

Defendants claim that such an order in a matter relating to domestic affairs would be violative of the right of free

speech and of normal social relations. The Court believes that under the circumstances herein depicted it would be no more of an infringement of the mentioned rights than the enforcement of the law of careless driving in a proper case is an abridgement of the right of citizens to operate their automobiles upon the highway.

In Parte Warfield, 50 Southwestern, 933, syllabus 6:

"That defendant was restrained in a suit for the partial alienation of a wife's affections, from conversing with or writing to her in any way or associating with her is not inconsistent with freedom of speech or of the press or of locomotion."

Smith v. Womack, 271 Southwestern, 209,—

Syl. 1. "An injunction restraining defendant from visiting with or accompanying plaintiff's husband and in person by telephone, telegraph or writing from communicating with plaintiff or her husband and from annoying plaintiff by attention to her husband is not in violation of Const. U. S. Amend. 1 or Const. Texas, Art. 1, Section 8, by curtailing freedom of speech."

They also say that human passion is involved in this matter which is not amenable to regulation by law. That, of course, is not sound thinking because it is only through the exercise of discipline with respect to human passion that man has evolved above the level of brute force and laws in many instances merely reflect such discipline. The killing of another in the "heat of passion," for instance, is manslaughter.

They further maintain that the order if made would be difficult to enforce since its disobedience in the main would only involve the defendants themselves. The answer to that assertion is the fact that this court issues hundreds of orders in domestic relation matters as a matter of routine all of which are inforceable through contempt proceedings and no insurmountable difficulties have been encountered with respect to their enforcement.

Divorces are at a scandalously high level in the United States today. Courts should use whatever powers they have to stem the tide. A restraining order against the third party in this case will be notice to others deliberately intent upon breaking up a family to take heed and desist from their course. The court is convinced that it will deter others from similar action and become a shield in protecting the integrity and the sanctity of family life in our community.

With respect to the demurrer of the defendant, James Pashko, it appears to this court that if an order is entered against defendant, Florence Haas, it will become necessary to

stay the hand of said James Pashko as well in order to prevent any possible circumvention of the court's order in respect of their relation.

The demurrers of both defendants are therefore overruled and exceptions noted.

The defendants herein at the hearing on the Motion for a Temporary Restraining Order stated that through their respective demurrers they raise the question of law permitting the order sought in this case and if the law should prove against them that they do not care to present any evidence to contravert the allegation of the Amended Petition and concede that an order should issue. A temporary restraining order as prayed for, therefore is granted and a bond of One Hundred Dollars ($100.00) set as to each defendant and a Journal Entry may be drawn accordingly.

These defendants also demur to that part of the prayer in this case asking that the temporary restraining order as to each defendant be made permanent upon the adjudication of this case. The court does not rule upon that phase of the matter and refers that branch of their respective demurrers to the court hearing this case upon its full merits.