**MILLER, Appellant,**

v.

**MILLER, Appellee.**

[Cite as *Miller v. Miller* (1989), 61 Ohio App.3d 269.]

Court of Appeals of Ohio,
Montgomery County.

No. 11252.

Decided Feb. 13, 1989.

*Gregory J. Corbin,* for appellant.

*Jeffrey P. Albert,* for appellee.

FAIN, Judge.

This appeal involves the construction of a termination of alimony provision. The parties agree that the evidence in the trial court established that plaintiff-appellant, Rosa Miller, was cohabiting with an unrelated male, and that her cohabitant was providing support by virtue of sharing the rental expense on an equal basis. The termination of alimony provision provides that "alimony shall be paid by the Obligor to the Obligee until she dies, remarries, or cohabits with an unrelated male who does provide support for the Obligee, or until further Orders of this court."

Mrs. Miller contends that the above-quoted provision does not apply unless and until her cohabitant provides support in an amount equal to or greater than the amount of alimony awarded. Defendant-appellee, Emile C. Miller, contends that this provision should be interpreted as providing for the termination of alimony if a cohabitant provides any support for Mrs. Miller.

Although we do not find the interpretation of the above-quoted provision to be completely free from doubt, we conclude that Mr. Miller's interpretation, evidently the interpretation adopted by the trial court, is better. Accordingly, the judgment of the trial court will be affirmed.

I

The parties were divorced in 1987. The divorce decree included a provision that "alimony shall be paid by the Obligor to the Obligee until she dies, remarries, or cohabits with an unrelated male who does provide for the Obligee, or until further Orders of this court."

In March 1988, Mr. Miller filed a motion requesting, among other things, the termination of alimony. This motion was heard by a referee, who found that the fact of cohabitation was uncontroverted. With respect to the issue of whether the cohabitant was providing support to Mrs. Miller, the referee found that " * * * the mere splitting of rent on an apartment has reduced the Plaintiff's monthly expenses by approximately $90."

The amount of alimony provided by the decree was $200 weekly.

The trial court adopted the report and recommendation of the referee, holding that the cohabitant's provision of any support to Mrs. Miller was grounds for termination of alimony, even though the support provided was less than the amount of the alimony that had been awarded.

From the trial court's order terminating alimony, Mrs. Miller appeals.

## II

Mrs. Miller's sole assignment of error is as follows:

"THE COURT ERRED IN TERMINATING ALIMONY WHEN TERMINATION REQUIRED A SHOWING THAT APPELLANT COHABITATED [*sic*] WITH AN UNRELATED MALE *AND* THAT SAID MALE COHABITANT PROVIDES 'SUPPORT' FOR APPELLANT." (Emphasis *sic*.)

Mrs. Miller concedes that the evidence established that she was cohabiting with an unrelated male. She contends that the alimony provision in the divorce decree should not be interpreted as providing for the termination of alimony if she receives less support from her cohabitant than the alimony. Since the support found was in the amount of $90 per month, and the alimony provided was in the amount of $200 per week, Mrs. Miller contends that the alimony termination provision in the decree was not triggered.

Mr. Miller argues that the termination provision in the decree does not expressly provide that the support furnished by a cohabitant must equal or exceed in amount the alimony ordered. On the other hand, the language does not expressly provide that the support provided by the cohabitant may be less than the amount of alimony.

If Mrs. Miller had remarried, it would be clear that alimony would terminate, pursuant to the provisions of the decree, regardless of the level of support, if any, that she would then be receiving from her new husband. The purpose of the cohabitation provision would seem to be to accomplish the same result if Mrs. Miller should enter into a comparable relationship with a male, without actually marrying him. Because it is often difficult to define such a relationship, the termination provision includes a requirement that the cohabitant must be providing support to Mrs. Miller, since the provision of support is often characteristic of the relationship between spouses. We conclude, therefore, that the trial court was correct in construing the provision so as not to require any particular level of support, but simply that the cohabitant be providing some support to Mrs. Miller, in order to trigger the termination of alimony.

We find additional support for this conclusion from the fact that a contrary construction would provide Mrs. Miller with a disincentive to marry her

cohabitant, because she would thereby lose her alimony, even though the alimony would continue in the absence of marrying her cohabitant, as long as the support provided by him did not equal or exceed the amount of alimony. "The public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation." *Pashko v. Pashko* (C.P.1951), 45 O.O. 498, 500, 63 Ohio Laws Abs. 82, 85, 101 N.E.2d 804, 806.

Given the state's interest in promoting matrimony, we would be loathe to adopt a construction of a termination of alimony provision that would provide a disincentive for a man and a woman in a relationship suitable for marriage to solemnize their relationship with matrimony. Accordingly, we conclude that the better construction of the alimony termination provision in the case before us is that the provision of any support by a male cohabitant is sufficient to trigger the termination of alimony.

Mrs. Miller's sole assignment of error is overruled.

### III

Mrs. Miller's sole assignment of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and WILSON, J., concur.