THOMAS, Appellee and Cross–Appellant,

v.

THOMAS, Appellant and Cross–Appellee.

[Cite as *Thomas v. Thomas* (1991), 76 Ohio App.3d 482.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–336.

Decided Dec. 3, 1991.

*Kemp, Schaeffer & Rowe* and *Harold R. Kemp*, for Jeffrey O. Thomas.

*Friedman & Babbitt Co., L.P.A., William S. Friedman* and *Gerald J. Babbitt*, for Karen D. Thomas.

McCormac, Judge.

Appellant and cross-appellee, Karen D. Thomas, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, sustaining appellee and cross-appellant Jeffrey O. Thomas' motion for termination of alimony.

On June 20, 1989, the parties' twenty-three-year marriage was terminated by a decree of dissolution. A separation agreement entered into by the parties was approved by the court and incorporated into the decree. The agreement provided that appellee would pay sustenance alimony in the amount of $2,000 per month for a period not to exceed five years. Alimony could cease at an earlier time if one of several delineated conditions subsequently occurred. One such condition is at issue and provides that alimony shall cease upon "wife's cohabitation (defined as wife residing with an unrelated male) * * *."

On August 24, 1990, appellee filed a motion to terminate alimony on the grounds that appellant was cohabitating with an unrelated male. A hearing was conducted before a referee who concluded that appellant was cohabitating and recommended that the court terminate appellant's sustenance alimony. The court overruled objections filed by both parties and adopted the recommendations of the referee.

Appellant appeals and raises the following assignments of error:

"I. The trial court erred in enforcing the provision in the parties' separation agreement which provided for termination of alimony upon appellant's cohabitation with an unrelated male.

"II. To the extent that cohabitation is included in a separation agreement as a determining factor respecting alimony or spousal support, it can only trigger the modification of alimony and not the termination of same.

"III. The trial court abused its discretion in finding that appellant had cohabitated under the terms of the parties' separation agreement."

Appellee has filed a cross-appeal, citing two assignments of error:

"I. The trial court erred in terminating the alimony as of the date of the filing of the motion and should have terminated said alimony as of the date appellant commenced residing with an unrelated male.

"II. The trial court erred as it failed to admit into evidence a transcript of a conversation which occurred between appellant and a private investigator, and which was duly authorized and proffered by appellee/cross appellant."

By her first assignment of error, appellant contends that the separation agreement provision allowing for termination of sustenance alimony upon the wife's cohabitation is punitive in nature and, hence, cannot support the trial court's termination order.

The courts of Ohio have held that, under proper circumstances, cohabitation can constitute grounds for the termination of sustenance alimony. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413; *Taylor v. Taylor* (1983), 11 Ohio App.3d 279, 11 OBR 459, 465 N.E.2d 476; *Miller v. Miller* (1989), 61 Ohio App.3d 269, 572 N.E.2d 742. However, "cohabitation" has become a term of art within the law and implies more than mere sexual relations. *Wolfe, supra.* As this court has stated in *Sindel v. Sindel* (App.1975), 7 O.O.3d 223, at 226:

" * * * The ordinary meaning of cohabitation is, of course, the act of living together. What constitutes living together is a question of fact in each particular case. * * * Ordinarily, isolated acts of sexual intercourse * * * unaccompanied by other aspects of living together, would not constitute cohabitation. Conversely, cohabitation can be based entirely on acts of living together without sexual relations. * * * "

Since *Sindel* was decided, several courts have had the opportunity to pass upon the issue of cohabitation as it relates to the termination of alimony. The underpinning of each decision is the rationale behind alimony itself. Alimony is provided for the needed support of the ex-spouse and, if the ex-spouse is living with another person to the extent that the other person provides support or is supported, then the underlying need for alimony is reduced or does not exist. Therefore, cohabitation, in the legal sense, implies that some sort of monetary support is being provided by the new partner or for the new partner. Without a showing of support, merely living together is insufficient to permit a termination of alimony. *Bussey v. Bussey* (1988), 55 Ohio App.3d 117, 563 N.E.2d 37.

The issue in this case centers on the parenthetical language included in the separation agreement. Appellee argues that, since a separation agreement is merely a contract, the parties are free to arrive at their own

definitions, absent fraud or duress. Therefore, the question becomes whether "residing with an unrelated male" so restricts the definition of "cohabitation" that it alleviates the requirement of support and, hence, is unconscionable as appellant suggests. It is our opinion that the terms do not so limit cohabitation and that a showing of support by or for the new partner is an implied element.

Appellee contends that a separation agreement is a contract and that the parties are free to bargain for whatever definition they desire. However, once a court incorporates a separation agreement into a decree of dissolution, the separation agreement loses its identity as a contract and becomes an order of the court. *Wolfe, supra.* As we have stated, cohabitation has been extensively commented on by the courts and has been given a meaning which includes support within the context of this action. However, the order defines "cohabitation" in terms of residing with an unrelated male.

Webster defines "reside" as:

"[R]eside * * * to dwell permanently or continuously: have a settled abode for a time: * * *." Webster's Third New International Dictionary (1986), at 1931.

As "cohabitation" has been defined, the two definitions would appear to be circular. "To reside" or "to cohabit" both mean to live together for a period of time. In the context of alimony, both must imply some form of support, especially in light of the inclusion of the "unrelated male" language. "Reside" does nothing to limit the legal definition of "cohabit." It is but one element of the definition.

The term "cohabitation" necessarily implies support and the additional parenthetical language defining it in terms of residing with an unrelated male may reasonably be interpreted, as it was by the trial court, to refer to the type of partner only rather than to eliminate the support element.

The remaining question is whether the new partner did provide support sufficient to permit the termination of alimony. This is the issue raised by appellant's third assignment of error, when she argues that the trial court's finding of cohabitation was against the manifest weight of the evidence.

As stated in *Sindel, supra,* cohabitation is a question of fact best settled by the trial court. The issue of cohabitation between appellant and Mr. Branscomb was the subject of considerable testimony. Appellant testified that both she and Branscomb lived at 558 Catalina Boulevard, San Diego, California, but that it was typical to split an apparent single-family residence into several living units because of the high cost of property in Southern California. She stated that the home was marked off into three living areas and that

she and Branscomb occupied separate areas. There was also testimony that courtesy, not permanent barriers, prohibited movement from one section to the other. Appellant admitted to sexual relations with Branscomb and to the occasional sharing of parental and housekeeping chores. Appellant also stated that Branscomb paid all rents and utilities in exchange for part-time secretarial services she performed for him. The referee noted that at one point appellant moved from a smaller to a larger portion of the home and that there was no indication that she increased the services performed for Branscomb commensurately.

Appellant's testimony could reasonably be interpreted in more than one way; her credibility was the determining factor which is best left to the trier of fact. The trial court's finding that appellant was cohabiting with Branscomb, as defined herein, is sufficiently supported by the evidence.

Appellant's first and third assignments of error are overruled.

■ Appellant argues in her second assignment of error that, even if the trial court was correct in its finding regarding cohabitation, it can only modify the award of alimony, not terminate it.

In *Wolfe, supra,* the Supreme Court stated that modification or termination could be proper, given the right circumstances. In *Bussey, supra,* the court held that termination was justified upon a showing of cohabitation. Cohabitation has been shown in this case and the trial court had the discretion to terminate alimony.

Appellant's second assignment of error is overruled.

■ Appellee asserts two cross-assignments of error. He first contends that the trial court erred by failing to terminate appellee's duty to pay alimony retroactive to the date of cohabitation rather than to the date upon which appellee filed his motion.

■ After a trial court has reserved jurisdiction to modify or terminate a temporary sustenance alimony award, it has broad discretion to do so. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. The trial court's decision will not be overturned absent an abuse of that discretion. *Id.*

The date upon which cohabitation commences cannot be determined with any degree of certainty. Cohabitation implies a course of conduct existing over a period of time. It is much more difficult to pinpoint a specific date than it is for other events, such as marriage or divorce. Appellee's citations to cases involving marriage are distinguishable. Appellee has not proved a specific date upon which cohabitation began.

Since appellee has failed to delineate clearly a date certain for appellant's cohabitation, the trial court did not abuse its discretion by fixing the date of appellee's filing as the date for termination of appellee's duty to pay alimony. See *Erlenbach v. Erlenbach* (July 14, 1988), Cuyahoga App. No. 54132, unreported, 1988 WL 85928.

Appellee's first cross-assignment of error is overruled.

Appellee also assigns as error the trial court's refusal to admit into evidence the transcript of a conversation between appellant and a private investigator. Even assuming that there was error, no prejudice has been demonstrated.

Appellee's second cross-assignment of error is overruled.

Appellant's assignments of error are overruled as are appellee's cross-assignments of error, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and PETREE, JJ., concur.