OPINION
On February 27, 1998, defendant-appellant, William R. Thurston, filed a motion in the Franklin County Court of Common Pleas, Division of Domestic Relations, to terminate spousal support based on alleged cohabitation with an unrelated male by plaintiff-appellee, Judy Thurston. The parties' marriage had been terminated by decree of dissolution in 1989. Appellant was ordered to pay appellee alimony. Article IV of the separation agreement provided in pertinent part that:
 Said payments shall continue until the death of either party, the remarriage of the Wife, the Wife's cohabitation with an unrelated adult male as defined below, or twenty years from the date of any decree terminating the marriage, whichever event shall first occur. For purposes of this agreement, cohabitation is defined as: cohabiting with the same adult for a period of 6 months, continuously or not continuously.
A magistrate conducted a hearing in which testimony was presented regarding appellee's relationship with Carlos Hodges. Appellee had gone into business with her sister in Parkersburg, West Virginia. Initially, appellee had been living with her sister, Joyce Ruble, in Parkersburg, but the sisters had a falling out, and appellee allegedly moved into the house of Steve Tracewell. Tracewell was the ex-husband of appellee's other sister, Diana Tracewell. Diana Tracewell had a one-half interest in Steve Tracewell's house on Spruce Rise Road in Parkersburg, and she allowed appellee to move there.
Appellee began spending part of each week with her son and his family in Columbus, Ohio, where she babysat for her grandchild. Carlos Hodges testified that appellee stayed overnight two or three nights per month, traveled with him, and had access to his answering machine and post office box.
On October 21, 1998, the magistrate filed his decision denying the motion on grounds that appellant had failed to establish by a preponderance of the evidence that appellee had been cohabiting with Carlos Hodges as defined in the parties' separation agreement and by applicable law.
Appellant filed objections to the magistrate's decision. The trial court held a hearing on the objections on May 13, 1999. On May 28, 1999, the trial court filed its decision and entry denying appellant's motion to terminate spousal support and finding that appellant had not shown that appellee was cohabiting with Hodges. This appeal followed.
On appeal, appellant has assigned as error the following:
 1. The Trial Court and Magistrate erred in finding that Mr. Thurston did not establish cohabitation by a preponderance of the evidence.
 2. The findings of fact and conclusions of law made by both the Magistrate and the Trial Court were against the manifest weight of the evidence.
 3. That specific findings of fact made by both the Magistrate and the Trial Court were inconsistent with testimony which appears in the record and trial testimony of Joyce Ruble and Jane Ruble submitted by deposition.
 4. That specific findings by the Trial Court that Mrs. Thurston had no burden of proving anything at trial before the Magistrate is in error.
 5. That the Magistrate and Trial Court erred in finding that Mr. Hodges did not voluntarily provide support to Mrs. Thurston.
 6. That the Magistrate and Trial Court erred in imposing upon Mr. Thurston the obligation of proving that the relationship between Mr. Hodges and Mrs. Thurston was analogous to a marriage.
 7. That the Magistrate and Trial Court erred in imposing upon Mr. Thurston the obligation of proving that there was consistency and permanency to the relationship between Mr. Hodges and Mrs. Thurston.
 8. That the Magistrate and Trial Court erred in allowing witness Diana Tracewell to testify about hearsay conversation she had with Joyce Ruble over the objection of Defendant.
In assignments of error four, six, and seven, appellant contends that the magistrate and the trial court applied the wrong burden of proof. Appellant argues that he was not required to show that appellee and Hodges were living together as husband and wife or that there was permanency in the relationship between appellee and Hodges. Appellant also argues that once he established a prima facie case of cohabitation, appellee had a burden to rebut the evidence of cohabitation.
As the moving party seeking to terminate alimony, appellee had the burden of establishing cohabitation. Dickersonv. Dickerson (1993), 87 Ohio App.3d 848, 851. Whether a particular living arrangement constitutes cohabitation is a question of fact in each case. Thomas v. Thomas (1991), 76 Ohio App.3d 482,485. Isolated acts of sexual intercourse, unaccompanied by other aspects of living together do not constitute cohabitation. Id. Conversely, cohabitation can be based on acts of living together without sexual relations. Id.
In Barclay v. Barclay (Dec. 11, 1997), Franklin App. No. 97APF07-902, unreported, this court was called upon to review a determination that a former spouse was not cohabiting with an unrelated male. The former spouse and the unrelated male maintained separate residences, but the unrelated male spent six of seven nights a week at the former spouse's house. However, he did not shower, keep a toothbrush or clothes at the former spouse's house. He received mail at his own house, kept his own refrigerator stocked, and cared for his pets at his own house. He purchased a vacation home for the former spouse as a gift, but he and she had no joint accounts, assets or credit cards, and neither had helped the other financially. They occasionally went out to dinner, the former spouse made dinner for him about once a week, and he did various repairs to the home and mowed the grass.
In affirming the decision of the trial court that there was no cohabitation, this court cited, with approval, Moell v.Moell (1994), 98 Ohio App.3d 748, and State v. Williams (1997),79 Ohio St.3d 459, as instructive on the issue of cohabitation. InMoell, the court addressed three main factors that a trial court should look to when determining cohabitation: (1) an actual living together; (2) of sustained duration; and (3) a sharing of expenses. The court also stated that the trial court could consider other relevant criteria, such as the behavior and intent of the parties. In Williams, the Supreme Court of Ohio stated the essential elements of cohabitation within the context of domestic violence are: (1) sharing of familial or financial responsibilities; and (2) consortium. The court stated that possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. Finally, the court stated that these factors are unique to each case and the weight to be given to each factor must be decided on a case-by-case basis.
In Thomas, this court addressed whether a separation agreement defining "cohabitation" as "residing with an unrelated male" so restricted the definition of cohabitation as to alleviate the requirement of support. This court held that the term "cohabitation" necessarily implied the element of support. Id. at 486.
Based on our review of the record in this case, we conclude that the magistrate and the trial court did not apply the wrong burden of proof. The key to their decisions was that appellant failed to prove that appellee and Carlos Hodges were living together or financially supporting one another. (Magistrate's decision at 4; trial court's decision at 4-5.) Whether those findings were against the manifest weight of the evidence is discussed in the remaining assignments of error.
Assignments of error one, two, three, and five are interrelated and attack the weight of the evidence. In these assignments of error, appellant argues that the findings of fact and conclusions of law made by both the trial court and the magistrate were against the manifest weight of the evidence as they did not take into account all of the evidence presented by appellant or the credibility of the witnesses. Specifically, appellant argues that the magistrate did not address credibility issues of appellee and Carlos Hodges, and appeared to have given all witnesses equal credibility. Appellant argues the magistrate did not give appropriate weight to appellee's answer to interrogatory number five in which she stated that she depended upon friends for a place to sleep. Appellant also argues that the trial court made findings of fact that were inconsistent with the evidence at the hearing.
Judgments supported by some competent, credible evidence going to all the essential elements of the issue will not be reversed by a reviewing court as being against the manifest weight of the evidence. C. E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279. In addition, an appellate court must give deference to the trier of fact's evaluation of the evidence and the credibility of witnesses. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80.
After reviewing the entire record in the instant case, we find that the trial court's evaluation of the evidence supports its conclusion that appellant failed to meet his burden of proving cohabitation.
Appellant's private detective was able to establish that, during the period in question, appellee spent several evenings with Carlos Hodges. Both appellee and Hodges acknowledged that appellee spent several nights a month at Hodges' house and that at least for a period of time they had had a sexual relationship. Appellee stored some items at Hodges' house and had access to his telephone answering machine and post office box. They traveled together on occasion.
On the other hand, they each prepared their own food. They had no shared bank accounts or credit cards, and neither loaned money to the other. There was testimony that appellee lived at Steve Tracewell's residence in Parkersburg during the period when she was allegedly cohabiting with Hodges. Appellee also stayed with her son several days each week when she was in Columbus, Ohio, babysitting her grandson. In interrogatory number five, appellee answered that the kindness and generosity of friends had provided her with a place to sleep. Appellant interprets this answer as an acknowledgment that appellee and Carlos Hodges were cohabiting. The answer can be viewed another way, however. In addition to Carlos Hodges, Steve Tracewell was the ex-husband of appellee's sister, Diana. Diana had a one-half interest in the house on Spruce Rise Road and offered the house to appellee as a place to live. Sharing a house with Steve Tracewell can be seen as relying upon the kindness of friends.
Appellant also argues that the trial court ignored evidence that Carlos Hodges financially supported appellee by providing appellee a rent-free residence, worth approximately $580 per month. However, this conclusion assumes that Carlos Hodges' house was her residence. If, as the trial court and magistrate found, appellee's residence was the Spruce Rise Road house when she was in Parkersburg, her spending nights at Carlos Hodges' do not amount to him providing financial benefit and support. It was within the discretion of the trial court to believe the testimony of appellee and Carlos Hodges that appellee resided at the Spruce Rise Road residence and visited Hodges several nights each month.
As the trial court found, appellant was not able to establish that Hodges provided monetary support for appellee. The assignments of error are not well-taken and are overruled.
In his eighth assignment of error, appellant argues the magistrate erred in admitting testimony by Diana Tracewell concerning conversations she had with Joyce Ruble. Tracewell was permitted to testify that appellant and his lawyer had contacted Ruble attempting to get her deposition, and threatened that, if Ruble did not agree to be deposed, he would depose her parents. Appellant objected on the basis of hearsay, and the magistrate overruled the objection.
An appellate court that reviews the trial court's admission or exclusion of evidence generally limits its review to whether the lower court abused its discretion. State v. Finnerty
(1989), 45 Ohio St.3d 104. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).
Here, the magistrate did not err in admitting the statements. The conversations were admitted, not for the truth of appellant's statements, but to question the credibility of the Tracewell's prior testimony that she had not discussed the case with appellant. The eighth assignment of error is not well-taken and is overruled.
Based on the foregoing, appellant's eight assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 _______________________ LAZARUS, J.
KENNEDY and DESHLER, JJ., concur.