[Cite as *Halliwell v. Halliwell*, 2020-Ohio-5548.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Michele Halliwell

    Appellee

v.

Nicholas A. Halliwell

    Appellant

Court of Appeals No. E-19-057

Trial Court No. 2015-DR-0189

**<u>DECISION AND JUDGMENT</u>**

Decided: December 4, 2020

* * * * *

Michael D. Kaufman, for appellee.

John M. Felter, for appellant.

* * * * *

**MAYLE, J.**

**Introduction**

{¶ 1} Appellant, Nicholas Halliwell, and appellee, Michelle Halliwell, divorced in 2017. After their divorce, several disputes arose between the parties, and a hearing was held before a magistrate. On September 25, 2019, the Erie County Court of Common Pleas, Domestic Relations Division, adopted the magistrate's decision, and Nicholas appealed. For the following reasons, we affirm, in part, and reverse, in part.

**Facts and Procedural History**

{¶ 2} Michelle filed a complaint for divorce in the trial court on December 3, 2015.  That same day, the trial court issued a judgment entry of injunctions, prohibiting either party from "selling, transferring [or] withdrawing * * * any of the property of the parties."  Nonetheless, in 2016, Nicholas withdrew $18,900 from his 401(k) retirement plan.

{¶ 3} On September 27, 2017, the trial court granted the parties a divorce.  The divorce decree contains a provision governing the payment of taxes for the 2016 taxable year.  With regard to Nicholas's 401(k) withdrawal, the provision states, "[h]usband shall pay to wife any and all additional tax liability resulting from his 401(k) withdrawal within ninety (90) days from the filing of the parties' 2016 tax returns."

{¶ 4} On December 4, 2017, Michelle filed a "motion and affidavit to show cause," claiming that Nicholas had failed to reimburse her "for the tax liability associated with his 401(k) withdrawal" and for "his share of [their children's] uninsured medical expenses."  Michelle asked the court to order Nicholas to appear in court and to show cause why he should not be held in contempt.

{¶ 5} On May 24, 2018, Nicholas filed a motion to terminate spousal support.  Under the divorce decree, Nicholas was required to pay spousal support to Michelle in the amount of $408 per month, beginning on April 1, 2017, and continuing for a period of 24 months.  The decree provided for early termination of spousal support "upon the happening of the first of the following events:  * * * (3) [Michelle's] co-habitation of a

2.

non-related adult as if in a marital relationship." In his motion, Nicholas argued that the court should terminate his spousal support obligation because Michelle was "cohabitating with an unrelated male." Nicholas also asked the court to reallocate the parties' respective parental rights.

{¶ 6} On February 21, 2019, the parties filed an "Agreed Judgment Entry/ Stipulations of Fact," which stated that they had "reached an agreement as to all outstanding issues" except two: (1) Nicholas's motion to terminate spousal support and (2) the amount that Nicholas must pay to Michelle for the additional tax liability resulting from his 401(k) withdrawal. The parties requested a hearing on those issues.

{¶ 7} On February 21, 2019, a hearing was held before a magistrate. On July 18, 2019, the magistrate issued findings of fact and conclusions of law. The magistrate found that Michelle was not cohabitating with another adult and, therefore, Nicholas must continue paying spousal support to Michelle. The magistrate also determined that Nicholas should pay $6,565 to Michelle for the "additional tax liability resulting from [Nicholas's] 401(k) withdrawal."

{¶ 8} Nicholas filed written objections to the decision. He did not, however, file a transcript of the hearing with his objections.

{¶ 9} On September 25, 2019, the trial court adopted the magistrate's decision, and it is from this decision that Nicholas appeals. He assigns two assignments of error for our review:

3.

1. The trial court erred when it denied Appellant's Motion to Terminate Spousal Support.

2. The trial court erred when it ordered Defendant/Appellant to pay Plaintiff/Appellee for purported additional tax liability.

**Standard of Review**

{¶ 10} As an initial matter, we note that when Nicholas filed his objections to the magistrate's decision with the trial court, he was required to file a transcript of the proceedings before the magistrate or, if a transcript was not available, an affidavit of the evidence presented to the magistrate. Civ.R. 53(D)(3)(b)(iii) (stating that objections to a magistrate's decision "shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available.") Nicholas was required to file the transcript or affidavit "within thirty days after filing objections." *Id.*

{¶ 11} Nicholas, however, did not file the hearing transcript or an affidavit in the trial court. (*See* March 27, 2020 Judgment Entry, Erie County C.P. case No. 2015-DR-0189).

{¶ 12} The Ohio Supreme Court has prescribed the consequences on appeal for failing to supply the requisite transcript or affidavit as follows: "appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the [magistrate's decision], and the appellate court is precluded from considering the

transcript of the hearing submitted with the appellate record."[1]  *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 654 N.E.2d 1254 (1995).  In other words, we must determine whether the trial court's application of the law to the magistrate's factual findings constituted an abuse of discretion.  *Id.*  The term "abuse of discretion" connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.  *Id.,* citing *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 107, 647 N.E.2d 799 (1995).

### 1. The trial court did not abuse its discretion in denying Nicholas's motion to terminate spousal support.

{¶ 13} In his first assignment of error, Nicholas argues that the trial court abused its discretion when it adopted the magistrate's conclusion that Michelle was not cohabitating with another adult and, therefore, Nicholas must continue paying spousal support as provided in the divorce decree.

{¶ 14} The purpose of spousal support is to provide for the financial needs of the former spouse.  *Moell v. Moell*, 98 Ohio App.3d 748, 751, 649 N.E.2d 880 (6th Dist.1994).  Therefore, if the former spouse is "living with another person [who] provides support or is supported, then the underlying need for [spousal support] is reduced or does not exist."  *Foster v. Foster*, 10th Dist. Franklin No. 15AP-1157, 2017-Ohio-4311, ¶ 22-23, quoting *Thomas v. Thomas*, 76 Ohio App.3d 482, 485, 602 N.E.2d 385 (10th

---

[1] By order dated April 27, 2020, we denied Nicholas's motion for leave to amend the praecipe and to supplement the record with the hearing transcript, based upon Nicholas's failure to file the transcript in the trial court.

5.

Dist.1991). "[C]ohabitation, in the legal sense, implies that some sort of monetary support is being provided by the new partner or for the new partner. Without a showing of support, merely living together is insufficient to permit a termination of [spousal support]. *Id.* Cohabitation is a question of fact for the trier of fact, and "[e]ach case must be evaluated on its own particular set of facts to determine whether cohabitation exists." *Moell* at 752.

{¶ 15} When considering the issue of whether a person is cohabiting, the fact finder should look to "three principal factors." These factors are "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." *Moell* at 752, quoting *Dickerson v. Dickerson*, 87 Ohio App.3d 848, 623 N.E.2d 237 (6th Dist.1993), fn. 2. The fact finder may consider "other relevant criteria" such as the "behavior and the intent" of the parties. *Id.*

{¶ 16} In his decision, the magistrate concluded that the "unrefuted facts" demonstrated that Michelle was not cohabitating with another adult as if in a marital relationship. The magistrate noted that, on July 4, 2018, Michelle and the children moved into a house in Amherst, Ohio that was recently purchased by "B.L." As of the hearing date, February 21, 2019, Michelle and B.L. were engaged to be married. The magistrate found, however, that "[a]ll of the evidence" demonstrated that B.L. lives in Black Lick, Ohio. In addition, the magistrate found that the couple does not share expenses for the residence. For example, Michelle purchased renters insurance in her

6.

own name, "pays for all" of the groceries and utilities, and furnished the home with her own belongings, although B.L. maintains "a few personal items" there. The magistrate found that Michelle does not yet "regard herself" as having a "marriage type relationship" with B.L., although they intended to marry in the near future. Finally, the magistrate concluded that "even if" it could be said that the couple "reside[s] together," under "no circumstances" have they done so for a "sustained duration."

{¶ 17} The trial court adopted the magistrate's findings and concluded that, as a matter of law, Michelle was not cohabitating with B.L. Accordingly, Nicholas was not relieved of his obligation to pay spousal support under the terms of the divorce decree.

{¶ 18} On appeal, Nicholas claims that the trial court "should have" determined that Michelle's relationship with B.L. was the "functional equivalent of marriage" because of their expressed intention to marry. In addition, Nicholas argues that Michelle "freely admitted" that B.L. "resided" with her on the weekends, and that B.L. paid the mortgage, home-owner's insurance, and property taxes on the Amherst home.

{¶ 19} Nicholas, however, is precluded from challenging the magistrate's factual findings because he did not file a hearing transcript with his objections in the trial court. Under *Duncan,* our review is limited to determining whether the trial court's application of the law to the magistrate's factual findings constituted an abuse of discretion.

{¶ 20} As noted above, when considering the issue of whether individuals are cohabiting, the trial court should consider "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day

7.

incidental expenses." *Moell* at 752. Here, the magistrate found that "even if" Michelle and B.L. were actually living together, "under no circumstances" were they doing so for "a sustained duration." The magistrate also concluded that Michelle and B.L. did not share day-to-day expenses.

{¶ 21} The trial court properly concluded that these factual findings do not support a finding of cohabitation under *Moell*. "Without a showing of support, merely living together is insufficient to permit a termination of [spousal support]." *Thomas*, 76 Ohio App.3d at 485, 602 N.E.2d 385. We therefore find that the trial court properly applied the law to the magistrate's factual findings when it concluded that Michelle and B.L. were not cohabitating under Ohio law, and the trial court did not abuse its discretion when it denied Nicholas's motion to terminate spousal support. The first assignment of error is not well-taken.

### 2. The trial court erred in its interpretation of the income tax provision of the divorce decree.

{¶ 22} Under his second assignment of error, Nicholas asserts several arguments relating to the trial court's decision that he must to pay $6,565 to Michelle for the additional tax liability resulting from his 401(k) withdrawal.

{¶ 23} First, Nicholas argues that because the trial court was considering Michelle's motion to show cause why he should not be held in contempt, the trial court could not order him to pay Michelle without a finding of contempt—which the trial court did not make. But, we note that the parties' jointly-filed stipulation (which was filed

8.

after Michelle's motion to show cause) expressly recognizes that "a court order [was] necessary" to determine "the amount of funds [Nicholas] is obligated to pay to [Michelle] in accordance with paragraph 7 of page 12 of the parties' [divorce decree]."  We therefore reject Nicholas's argument to the contrary.

{¶ 24} Second, Nicholas challenges the trial court's interpretation of paragraph 7 of the divorce decree.  That provision provides,

> 7.  Other:  The parties shall file their 2016 federal, state and local income tax returns in the manner which would result in the greatest refund and/or least liability owed.  The parties shall share equally in the cost to prepare said returns, as well as any refund and/or liability.  Husband shall pay to wife *any and all additional tax liability resulting from his 401(k) withdrawal* within ninety (90) days from the filing of the parties' 2016 tax returns.  (Emphasis added.)

{¶ 25} The magistrate found that Nicholas "inappropriately with[drew]" $18,900 from his 401(k) retirement plan in 2016, and reviewed his tax returns to determine the "additional tax liability" of that event.

{¶ 26} Based upon Nicholas's 2016 federal tax return, the magistrate found that "the $18,990.00 401(k) distribution * * * produce[d] a 0$ refund * * * and a tax liability of $980.00."

9.

**{¶ 27}** Based upon Nicholas's 2016 Ohio tax return, the magistrate found that "the 18,990.00 401(k) distribution * * * produce[d] a refund of $1,230.00." That is, no additional monies were owed.

**{¶ 28}** Next, the magistrate concluded that it was necessary to determine what the tax consequences *would have been* without the 401(k) withdrawal. Michelle submitted "proposed tax returns" that the magistrate relied upon for these purposes. The magistrate concluded that the proposed tax returns "do[] not report the $18,900.00 401(k) distribution * * * but in all other material respects mirror[] the data included in [Nicholas's] actual" returns. Based upon that evidence, the magistrate concluded that, without the 401(k) withdrawal, Nicholas would have owed zero dollars to the U.S. Treasury and would have been entitled to a $4,907 refund. In Ohio, Nicholas would have owed zero dollars and would have been entitled to a $1,908 refund.

**{¶ 29}** The magistrate ultimately concluded that the "additional tax liability resulting from [Nicholas's] 401(k) withdrawal" should be the "amount of the refund or liability" set forth on the actual returns, "offset against" the "refund or liability" set forth in the proposed returns. The magistrate's decision includes the following calculations:

**Federal 1040 Calculations**
| | |
|---|---|
| With 401(k) withdrawal, tax liability | (-$980.00) |
| Without 401(k) withdrawal, tax refund | $4,907.00 |
| Total Additional Federal Tax Liability | $5,887.00 |

**State T 1040 Calculations**
| | |
|---|---|
| With 401(k) withdrawal, tax refund | $1,230.00 |
| Without 401(k) withdrawal, tax refund | $1,908.00 |
| Total Additional Ohio Tax Liability | $678.00 |

10.

{¶ 30} Based upon the above, the magistrate concluded that the "additional tax liability resulting from [Nicholas's] 401(k) withdrawal" was $5,887 (federal) + $678 (Ohio) for a total of $6,565. The trial court adopted the magistrate's findings and, pursuant to paragraph 7 of the divorce decree, ordered Nicholas to pay Michelle that amount.

{¶ 31} The parties' separation agreement, including paragraph 7, was incorporated into the trial court's divorce decree. In interpreting a divorce decree that incorporates the parties' separation agreement, the normal rules of contract interpretation apply. *Yarder v. Scherer,* 6th Dist. No. L-03-1035, 2003-Ohio-6744, ¶ 15. "If the decree is clear and unambiguous, its interpretation is a matter of law and will be reviewed *de novo.*" *Peters v. Peters*, 2d Dist. Montgomery No. 18445, 2001 WL 173214 (Feb. 23, 2001). Moreover, "[t]he threshold question of whether an ambiguity exists is a question of law that we review do novo." *Yarder* at ¶ 17. If the terms are clear and unambiguous, courts cannot create a new agreement by finding an intent not expressed in the clear language employed by the parties. *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992), syllabus. Common words should be given their ordinary meaning, unless manifest absurdity results or unless some other meaning is clearly evidenced from the instrument. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of syllabus.

11.

{¶ 32} Here, Nicholas argues that the court ignored the plain language of paragraph 7 when it concluded that "additional tax liability" included "any refund that [Michelle] may have missed out on due to his early withdrawal."

{¶ 33} The divorce decree states that Nicholas must pay Michelle "any and all additional tax liability resulting from his 401(k) withdrawal." The word "additional" is an adjective, defined as "more than is usual or expected." *See www.merriam-webster.com/dictionary/additional.* A "tax liability" is defined as "the amount which a taxpayer owes under the tax law after properly computing gross income and deductions, using the appropriate tax rate and subtracting any applicable tax credits." *Black's Law Dictionary* (6th Ed.1990). Under the plain language of this provision, Nicholas's obligation to pay Michelle arises, not just for any tax liability, but for any "additional" tax liability created by the 401(k) withdrawal. According to the magistrate's findings of fact, the entirety of the $980 federal tax liability was attributable to the 401(k) withdrawal, and therefore, Nicholas is obligated to pay that amount to Michelle. In Ohio, the 401(k) withdrawal resulted in no additional tax liability, and therefore, under paragraph 7, he owes her nothing.

{¶ 34} But, we find no support for the trial court's conclusion that Nicholas must pay Michelle for any *refunds* that would have been owed by the taxing agencies but for Nicholas's 401(k) withdrawal. A "refund" is defined as "the amount a taxpayer or reporting entity would receive from the government due to an overpayment of taxes." *Black's Law Dictionary* (6th Ed.1990). That is, a tax refund is money owed by the

12.

taxing agencies; a tax liability is money owed to the taxing agencies. While paragraph 7 specifically provides that Nicholas must pay Michelle for "any and all additional tax liability" that may have "result[ed]" from the 401(k) withdrawal, it does not provide that Nicholas must pay Michelle for any and all tax *refunds* that may have been *missed* due to the 401(k) withdrawal. Indeed, we note that the parties expressly referred to refunds *and* liabilities in other portions of paragraph 7—stating, for example, that the parties would share "any refund and/or liability" equally—which lends further support to our conclusion that the parties did not intend "additional tax liability" to include missed tax refunds.

{¶ 35} For these reasons, we find Nicholas's second assignment of error well-taken. Under the plain and unambiguous language of the divorce decree, Nicholas must pay the additional tax liability that resulted from his early withdrawal of his 401(k)—which the magistrate concluded to be $980—but he is not obligated to pay Michelle for any tax refunds that may have been missed due to his early withdrawal of those funds.

### Conclusion

{¶ 36} The trial court's September 25, 2019 judgment entry is affirmed, in part, and reversed, in part. As set forth herein, the trial court did not abuse its discretion when it concluded that Michelle was not cohabitating with another adult and, therefore, Nicholas must continue paying spousal support under the terms of the divorce decree. Accordingly, Nicholas's first assignment of error is found not well-taken.

13.

**{¶ 37}** But, the trial court erred when it concluded that Nicholas's obligation to pay Michelle the "additional tax liability" that resulted from his early withdrawal of his 401(k) plan included any refunds that would have been payable if Nicholas had not withdrawn those monies. Accordingly, we find Nicholas's second assignment of error well-taken. We find that Nicholas's obligation is limited to the additional tax liability that resulted from his early withdrawal, which is $980. We remand this case to the trial court with the instruction that it issue a judgment entry accordingly.

**{¶ 38}** The parties shall share the costs of this appeal equally pursuant to App.R. 24.

Judgment affirmed, in part,<br>
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____

JUDGE

Christine E. Mayle, J.

                                               _____

Gene A. Zmuda, P.J.                        JUDGE

CONCUR.

                                                 _____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.