[Cite as *Wylie v. Wylie*, 2024-Ohio-1179.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

| | |
|---|---|
| Thomas J. Wylie, Sr. | Court of Appeals No.  F-23-004 |
| Appellant | Trial Court No.  13 DS 150 |
| v. | |
| Lisa M. Wylie | **<u>DECISION AND JUDGMENT</u>** |
| Appellee | Decided:  March 28, 2024 |

* * * * *

Andrew J. Ayers and Robert J. Bahret, for appellant.

Bradley R. Waugh, for appellee.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant, Thomas J. Wylie, Sr., appeals the May 18, 2023 judgment of the Fulton County Court of Common Pleas, Domestic Relations Division, ordering him to pay a portion of the proceeds from the sale of certain real property to appellee, Lisa M. Wylie.  For the following reasons, the trial court's judgment is affirmed.

## I. Background

{¶ 2} Thomas Wylie and Lisa Wylie's marriage was dissolved on October 18, 2013. Thomas was represented in the dissolution action; Lisa was not. As part of the dissolution, Thomas and Lisa entered into a separation agreement, drafted by Thomas's attorney. The separation agreement specified how the parties' marital property would be divided and was incorporated into the decree of dissolution.

{¶ 3} Among the property divided under the separation agreement was a marital business called Wylie & Sons Landscaping, LLC (also referred to as Marital Business 1). The agreement provided for the division of that property as follows:

> Section III(B)(1)(b). The parties agree that Husband shall be entitled to all right, title and interest in said Marital Business 1, including any and all property and other assets titled in the name of said business, free and clear of any interest of Wife, except for the Sand Lot located as CR 5, Swanton, Ohio. Husband shall be responsible for all costs and debt associated with said Marital Business 1, including but not limited to any and all mortgages, liens, loans, taxes, insurance, maintenance and repairs, and shall indemnify and hold Wife harmless thereon, except further provided in provision B(1)(c) as follows.

> Section III(B)(1)(c). The parties agree that the Sand Lot * * *, which is an asset of Marital Business 1, shall be divided equally between Husband and Wife when said Sand Lot is sold, except that Husband shall

2.

first receive reimbursement for the taxes and insurance paid on said property by Marital Business 1, from January 1, 2013 until the sale date of the Sand Lot, before division of the proceeds from the sale of the Sand Lot between Husband and Wife. Thus, Husband shall be reimbursed for payment of taxes and insurance of the Sand Lot, and after reimbursement of those sums to Husband, the remaining balance shall be divided equally between Husband and Wife.

{¶ 4} On April 27, 2022, Lisa filed a motion to show cause, alleging that Thomas had violated the decree of dissolution by, among other things not at issue in this appeal, failing to pay her half of the proceeds from the sale of the Sand Lot, which had been sold in December of 2019. Lisa claimed that the Sand Lot sold for $400,000, therefore, she was entitled to $200,000 from the sale of that property, plus interest.

{¶ 5} The motion was heard by a magistrate on February 14, 2023; no transcript of proceedings was filed in the trial court or in this court. According to the magistrate's March 10, 2023 decision, Thomas submitted evidence showing in 2008, the Sand Lot was encumbered by a lien in order to save the business. When the property sold in 2019, $435,859.98 was owed to Key Bank, thus the proceeds of the sale plus an additional $35,000 had to be repaid in order to complete the sale. Thomas claimed that because the amount owed on the property exceeded the sale price of the property, there were no proceeds from the sale and Lisa was entitled to no payment.

3.

{¶ 6} The magistrate interpreted the separation agreement and concluded that according to its plain and unambiguous meaning, Thomas was solely responsible for the mortgage on the Sand Lot. The only expenses that Thomas was to be credited with under the terms of the agreement were insurance and taxes paid from 2013, to the date of closing. Absent any language providing that the amount owed on the mortgage would be subtracted before dividing the proceeds between the parties, or absent an indication that the parties would divide only the *net* proceeds of the sale of the property, the magistrate concluded that Lisa was entitled to half of the sale price, minus insurance and taxes, without respect to the amount owed on the mortgage. The magistrate found Thomas in contempt and ordered him to (1) provide the court with the amount of the insurance premiums and property taxes paid for the Sand Lot since January of 2013; (2) offset the amount of those insurance premiums and property taxes from the $400,000 sale price; and (3) pay Lisa half of that amount.

{¶ 7} On March 15, 2023, Thomas filed submissions indicating that he paid insurance costs of $88,577 for the years 2014 through 2018, insurance costs of $33,414 for 2019, and taxes of $48,260.06 for 2013 to 2019. He also stated that he incurred closing costs of $19,390, and commented that "[c]ertainly, those expenses should come off of the gross sale price of $400,000."

{¶ 8} Thomas filed a dual motion to set aside the magistrate's decision and objections to the magistrate's decision. He maintained that there were no net proceeds of the sale of the Sand Lot, and it defied logic to conclude that the parties intended that the

4.

sale proceeds would be divided equally without consideration for any outstanding mortgage on the property. Thomas acknowledged that the agreement required him to make the mortgage payments on the Sand Lot, but he insisted that it did not require him to pay the balance of the mortgage "on his own dime" while also sharing the "proceeds of sale that do not even exist." He also claimed that closing expenses of $19,390, including commission to the realtor, were incurred.[1]

{¶ 9} The trial court found that Thomas's motion to set aside the magistrate's decision was procedurally improper, but considered his objections to the decision. Because no transcript of proceedings had been filed, the court accepted the magistrate's findings of fact.

{¶ 10} The court concluded that reading the separation agreement as a whole, the terms of that agreement relating to the sale of the Sand Lot are clear and unambiguous. Section III (B)(1)(b) specifically states that Thomas was entitled to all rights, titles, and interests in that business, except for the Sand Lot, and was responsible for all costs and debt associated with that business, including, all mortgages, liens, loans, taxes, insurance, maintenance, and repairs. He was required to indemnify and hold Lisa harmless, except as provided in section III(B)(1)(c).

{¶ 11} Section III(B)(l)(c) states that upon the sale of the Sand Lot, the parties were to divide the proceeds of the sale equally after Thomas was first reimbursed for the

---

[1] Neither the magistrate's decision nor the trial court's judgment addresses closing expenses, and Thomas does not argue this issue on appeal.

taxes and insurance paid in connection with the Sand Lot between January 1, 2013, and the date the Sand Lot was sold. The court determined that Section III(B)(1)(b) contained an extensive list of the costs and debts associated with the maintenance of that business—i.e., mortgages, liens, loans, taxes, insurance, maintenance and repairs—but Section III(B)(1)(c) limited Thomas's reimbursement to only taxes and insurance paid in connection with the Sand Lot for a specified period of time. It concluded that based on the language used by the parties, they intended that Thomas would be reimbursed only for *certain* expenses, not *all* expenses.

{¶ 12} The court found that this reading of the provision was underscored by the use of the term "proceeds" rather than "net proceeds" in Section III(B)(1)(c). It observed that Cambridge Dictionary defines "proceeds" to mean "the amount of money received from a particular event or activity or when something is sold," whereas "net proceeds" means "the profit from selling goods or services after all costs have been paid." The court emphasized that the agreement clearly and unambiguously entitled Lisa to half the "proceeds" of the sale. It noted that even if this provision was ambiguous, any ambiguity would have to be construed against Thomas because the magistrate found that Thomas's attorney drafted the separation agreement.

{¶ 13} Because Thomas submitted documentation indicating that the cost of insurance was $146,204, and the taxes paid were $48,260.06, the court calculated that the reimbursable expenses totaled $194,464.06. It determined that after reducing the

6.

$400,000 sale price by those reimbursable expenses, the amount remaining was $205,535.94, of which Lisa was entitled to half—$102,767.97.

{¶ 14} Accordingly, the trial court (1) overruled Thomas's objections; (2) adopted the magistrate's decision; and (3) ordered Thomas to pay Lisa $102,767.97 within 90 days of the date of its judgment.

{¶ 15} Thomas appealed. He assigns the following errors for review:

> The trial Court erred in affirming the Magistrate's decision erroneously ordering payment of the remaining balance to the proceeds of the sale of property when no proceeds were received and no reaming [sic] balance existed.

> The Trial Court erred in awarding a windfall to Appellee.

## II. Law and Analysis

{¶ 16} Thomas's assignments of error are related and can be addressed together. He argues that the trial court erred when it ordered him to pay Lisa $102,767.97 because he received no money from the sale of the Sand Lot; rather, the amount of the sale did not fully repay the loan balance, thus the lender received all the proceeds of the sale *plus* an additional amount that Thomas had to pay out of his own pocket. He maintains that the trial court ignored additional language in section III(B)(1)(c), which conditioned payment to Lisa on there being "a remaining balance" from which funds could be distributed, and he insists that there was no remaining balance here. Thomas acknowledges that the trial court consulted the Cambridge Dictionary for a definition of "proceeds," but he claims

7.

that the court overlooked the undisputed fact that no money was received from the sale, thus there were no "proceeds" from the sale.

{¶ 17} Thomas contends that the trial court awarded money to Lisa that the parties never intended. He maintains that the intent of the separation agreement was to divide the couple's assets and eliminate their liabilities. Because both Thomas and Lisa were members of the limited liability company that owned the sand pit, both were responsible for debt secured by the property. Thomas claims that the parties intended that the sale of the sand pit would eliminate debt secured by the property, and they would split any remaining balance. They agreed that Lisa would receive half of the remaining balance, not half of the sale price. Thomas insists that by ignoring this provision, the trial court granted a windfall to Lisa, placing her in a better position than she would have been otherwise.

{¶ 18} Lisa responds that "mortgage" is explicitly listed in section III(B)(1)(b) of the agreement, and the language in that provision makes clear that any mortgage on the Sand Lot was Thomas's responsibility. She maintains that Section III(B)(1)(c) plainly states that after reimbursing Thomas for taxes and insurance, proceeds from the sale of the Sand Lot would be split equally between them. Lisa emphasizes that the term "mortgage" is not included in the enumerated list of items for which Thomas was to be reimbursed.

{¶ 19} Lisa disagrees that "proceeds" can only mean the amount left over after the mortgage is paid. She insists that if it was the parties' intent to pay off the mortgage

8.

before dividing the proceeds, section III(B)(1)(c) would have explicitly referenced "mortgages" among the items for which Thomas would be reimbursed. She maintains that because section III(B)(1)(b) references "mortgages, liens, loans, taxes, insurance, maintenance and repairs" and section III(B)(1)(c) references only taxes and insurance, under the maxim expressio unius est exclusio alterius, it can be inferred that the parties intended not to include mortgages among the expenses reimbursable to Thomas.

{¶ 20} As for Thomas's argument that there was no "remaining balance" to be divided, Lisa maintains that "remaining balance" is used in reference to the balance after Thomas was reimbursed for taxes and insurance. She insists that under the legal maxim noscitur a sociis, the meaning of "remaining balance" must be read in context and derived from the meaning of accompanying words. Here, she argues, "remaining balance" means the amount remaining after reimbursing Thomas for taxes and insurance.

{¶ 21} Lisa claims that the trial court correctly noted that section III(B)(1)(c) uses the term "proceeds" as opposed to "net proceeds." She explains that "proceeds" means the amount of money received from a sale, while "net proceeds" means the profit from a sale after all costs have been paid. Absent a different definition in the agreement, the term "proceeds" must be ascribed its natural definition. She submits that if Thomas wished for "proceeds" to mean the total amount of money left over from the sale after any mortgages are satisfied, the agreement could have been drafted to say so. Moreover, Lisa points out, if the separation agreement is found to be ambiguous, that ambiguity must be construed against Thomas because his counsel drafted the agreement.

9.

**{¶ 22}** Finally, Lisa disputes that the trial court's interpretation of the separation agreement yields an absurd result. She contends that the agreement specifies that Thomas is solely responsible for any mortgages on the property and requires him to hold her harmless for any such mortgages. She emphasizes that after the dissolution, she did not receive any of the profits from Wylie & Sons Landscaping, LLC. Her only extraction of value from the Sand Lot was to occur when it was eventually sold. She claims that reducing the proceeds by the amount of the mortgage would, in essence, hold her directly liable for the mortgage on the property.

### A. Standard of Review

**{¶ 23}** The parties' separation agreement was incorporated into the divorce decree. The normal rules of contract interpretation apply in interpreting a divorce decree that incorporates the parties' separation agreement. *Halliwell v. Halliwell,* 6th Dist. Erie No. E-19-057, 2020-Ohio-5548, ¶ 31, citing *Yarder v. Scherer,* 6th Dist. Lucas No. L-03-1035, 2003-Ohio-6744, ¶ 15. An appellate court reviews de novo a trial court's interpretation of a separation agreement that has been incorporated into a divorce decree. *Id.*; *see also Yodzis v. Savercool*, Lucas No. L-12-1159, 2012-Ohio-5558, ¶ 9.

**{¶ 24}** If the terms are clear and unambiguous, the court "cannot create a new agreement by finding an intent not expressed in the clear language employed by the parties." *Id.,* citing *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992), syllabus. Common words must be given their ordinary meaning, "unless manifest absurdity results or unless some other meaning is clearly evidenced from the

10.

instrument." *Id.,* citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of syllabus. "Contracts are generally construed against the drafter." *Rohlman v. Rohlman*, 2018-Ohio-1543, 110 N.E.3d 1006, ¶ 14 (6th Dist.).

**B. De Novo Review of Section III(B)(1)**

{¶ 25} Applying the principles of contract interpretation, and for the reasons that follow, the trial court properly calculated the amount owed to Lisa under Section III(B)(1) of the parties' separation agreement.

{¶ 26} First, because section III(B)(1)(c) specifically states that Thomas will be reimbursed for taxes and insurance, and by *not* specifying that he would also be reimbursed for satisfying the mortgage on the property, taxes and insurance are the only expenses that were reimbursable. "'Expressio unius est exclusio alterius is an interpretative maxim meaning that if certain things are specified in a law, contract, or will, other things are impliedly excluded.'" *Wildcat Drilling, LLC v. Discovery Oil and Gas, LLC*, 172 Ohio St.3d 160, 2023-Ohio-3398, 222 N.E.3d 621, ¶ 24, quoting *State ex rel. Paluf v. Feneli*, 69 Ohio St.3d 138, 143, 630 N.E.2d 708 (1994). "Typically, expressio unius est exclusio alterius is applied when there is a listing of items in an associated group or series, which 'justif[ies] the inference that items not mentioned were excluded by deliberate choice, not inadvertence.'" *Mercer v. 3M Precision Optics, Inc.,* 181 Ohio App.3d 307, 2009-Ohio-930, 908 N.E.2d 1016, ¶ 13 (12th Dist.), quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653

11.

(2003). Here, it can properly be inferred that the parties deliberately included taxes and insurance—and deliberately *excluded* mortgages—as costs reimbursable to Thomas. This is especially so given that the immediately-preceding provision of the agreement addressed "mortgages, liens, loans, taxes, insurance, maintenance and repairs."

{¶ 27} Second, the ordinary meaning of "proceeds" is "the amount of money received from a sale," while the ordinary meaning of "net proceeds" is "[t]he amount received in a transaction minus the costs of the transaction." Black's Law Dictionary 1325 (9th Ed.2009). Applying the ordinary meaning of "proceeds," the amount owed to Lisa must be calculated by using the sale amount minus *only* the costs specified in section III(B)(1)(c)—not the sale amount minus costs *other than* those specified. If the phrase "net proceeds" had been used, it could be argued that all costs could be subtracted from the sale price in calculating the amount owed to Lisa. But "net proceeds" was not used, and the agreement must be interpreted using the ordinary meaning of the words employed by the parties.

{¶ 28} Third, the agreement does not condition payment to Lisa on there being "a remaining balance" from which funds could be distributed. For one, contrary to Thomas's assertion, the agreement simply does not say this. Rather, it provides that "the remaining balance shall be divided equally." "Under the rule of interpretation known as noscitur a sociis, words that are listed together should be understood in the same general sense." *Vossman v. AirNet Sys., Inc.*, 2020-Ohio-872, 152 N.E.3d 232, ¶ 19; *see also Renfroe v. Ashley,* 167 Ohio St. 472, 474, 150 N.E.2d 50 (1958). "[If] the meaning of a

12.

word is unclear, a court will look at the surrounding words to ascertain the doubtful word's meaning. *Ashland Chem. Co. v. Jones*, 92 Ohio St.3d 234, 237, 749 N.E.2d 744 (2001). Here, it is clear from the context of the surrounding words that "remaining balance," as used in section III(B)(1)(c), means the sale amount minus taxes and insurance paid for by Thomas.

{¶ 29} Fourth, contrary to Thomas's assertion that there were no "proceeds" from the sale because the entire sale amount was paid to the bank, the buyer paid $400,000 for the property. As referenced above, "proceeds" means "the amount of money received * * * when something is sold." In this case, the Sand Lot was sold and $400,000 was received. While Thomas may have owed the entire amount to the bank to satisfy the mortgage, the fact remains that $400,000 was received from the sale. Absent use of the phrase "*net* proceeds" or some other indication that the mortgage was intended to be subtracted as an expense, the trial court properly refused to consider the outstanding mortgage in calculating the amount owed to Lisa following the sale of the Sand Lot.

{¶ 30} Fifth, section III(B)(1)(b) of the agreement would be undermined if the amount of the mortgage was subtracted from the purchase price in calculating the amount owed to Lisa. Under that provision, Thomas agreed to be responsible "for all costs and debt associated" with Wylie & Sons Landscaping, LLC, "including but not limited to any and all mortgages * * *." If the mortgage was paid with proceeds from the purchase price, Lisa, in effect, would be responsible for the mortgage, contrary to the parties' agreement.

13.

{¶ 31} Finally, as to Thomas's claim that Lisa received an unintended windfall, the role of this court is to interpret the terms of the agreement. The terms of the agreement are unambiguous. Thomas "agreed to the property settlement, and his agreement should be given full force and effect, even if he now sees it as a 'bad deal.'" *Hone v. Hone,* 12th Dist. Brown No. CA91-12-023, 1992 WL 201040, *2 (Aug. 17, 1992), citing *Knapp v. Knapp*, 24 Ohio St.3d 141, 145 493 N.E.2d 1353(1986). *See also Humphrey v. Humphrey,* 11th Dist. Ashtabula No. 2006-A-0083, 2007-Ohio-6738, ¶ 40 ("The post hoc, subjective revelation that one has entered into a 'bad deal' is insufficient to warrant setting the agreement aside."); *Southers v. Southers,* 10th Dist. Franklin No. 11AP-113, 2011-Ohio-6233, ¶ 14 (commenting that Husband "made his own deal— albeit a bad one and this Court will not substitute its judgment on same."). The role of the court is to interpret the agreement as written.

{¶ 32} Here, the trial court properly (1) overruled Thomas's objections; (2) adopted the magistrate's decision; and (3) ordered Thomas to pay Lisa $102,767.97 as her portion of the proceeds of the sale of the Sand Lot. Thomas's assignments of error are not well-taken.

### III. Conclusion

{¶ 33} Under the clear and unambiguous language of the parties' separation agreement, Thomas and Lisa were to share equally in proceeds from the sale of the Sand Lot after subtracting out taxes and insurance from the $400,000 purchase price. Although the lender had a mortgage on the property that exceeded the amount of the

14.

purchase price of the property, the agreement did not provide that the outstanding mortgage would be subtracted from the purchase price before calculating Lisa's share of the proceeds. Thomas's assignments of error are found not well-taken.

{¶ 34} The May 18, 2023 judgment of the Fulton County Court of Common Pleas, Domestic Relations Division, is affirmed. Thomas is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.       _____
                JUDGE
Myron C. Duhart, J.

             _____
Charles E. Sulek, P.J.      JUDGE
CONCUR.

             _____
                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.