[Cite as *Brennan v. Brennan*, 2021-Ohio-1865.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| RHIANNON BRENNAN | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | |
| -vs- | : | |
| | : | Case No. CT2020-0047 |
| TODD BRENNAN | : | |
| | : | |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Muskingum County Court
of Common Pleas Court, Domestic
Relations Division, Case No. DA2017-1006

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     June 1, 2021

APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

ROSE M. FOX
Fox Law Office                             TODD BRENNEN PRO SE
233 Main Street                            2875 Jenkins Drive
Zanesville, OH 43701                       Zanesville, OH  43701

*Gwin, J.,*

{¶1} Appellant appeals the August 31, 2020 judgment entry of the Muskingum County Court of Common Pleas, Domestic Relations Division, finding her in contempt of court.

*Facts & Procedural History*

{¶2} On December 12, 2017, appellant Rhiannon Brennan ("Mother") filed a complaint for divorce against appellee Todd Brennan ("Father"). The parties have one child, M.B., who was born on September 15, 2010.

{¶3} The parties reached an agreement on all issues except for the allocation of parental rights. While Father wanted specific parenting time, Mother wanted Father to have parenting time in accordance with a counselor's recommendation. In a judgment entry on October 17, 2018, the trial court noted that it was not provided evidence as to the nature of the child's counseling and was not provided any guidance as to what the counselor would recommend, nor the timeframes involved. The trial court additionally noted in its entry that "it was obvious that [M.B.] had far more knowledge of this proceeding than is appropriate" and "many of her observations and phrases the Court has heard previously from the testimony in the court room." The trial court determined the parties could not operate under a cooperative parenting agreement, and it was in the best interest of the child for Father to have a limited parenting schedule.

{¶4} In early November of 2018, prior to the final divorce decree being entered, Father filed a motion for contempt and Mother filed a motion for emergency suspension of Father's parenting time. The trial court denied both motions.

{¶5} The trial court issued a judgment entry and decree of divorce on November 19, 2018. The trial court designated Mother as the residential parent, and ordered Father to have parenting time from 1:00 p.m. to 5:00 p.m. the first, second, and third Sundays of each month, and from 1:00 p.m. to 5:00 p.m. on Father's holidays.

{¶6} Mother filed a motion for emergency temporary suspension of Father's parenting time on November 21, 2018, arguing a counselor recommended suspension of Father's parenting time. Mother withdrew her motion on December 3, 2018, stating M.B. "elected go to with [Father] for his parenting time and reported no concerning issues to [Mother]."

{¶7} Father filed a motion for contempt on August 28, 2019, stating Mother refused him parenting time for several months. The trial court appointed Mother counsel on the contempt portion of the proceeding.

{¶8} The trial court held an evidentiary hearing on February 14, 2020.

{¶9} Abigail Souzis ("Souzis") was previously the therapist for M.B. from June of 2018 to August of 2019. M.B. told Souzis she witnessed violence by Father towards Mother and that Father made verbal threats towards M.B. when she, Mother, and Father lived together. Thus, M.B. felt anxious when she visited Father. Souzis does not recall what M.B. said was going on during the visits that made M.B. anxious. M.B. and Souzis created a safety plan for visits with Father in order to help M.B. feel safe. Souzis was unable to complete the trauma processing portion of therapy, because M.B. was being exposed to her trauma trigger, which was seeing Father. Souzis could not testify as to how long M.B. would have to be away from Father to complete therapy, as there is no specific time frame for how long it takes.

{¶10} On cross-examination, Souzis could not recall the specifics of when M.B. reported Father threatened her, but confirmed M.B. would have been approximately three-and-a-half years old when it happened. Souzis did not get the sense M.B. was repeating what Mother said. Souzis recalled M.B. told her she would have a lot of stress when going to the exchange location, but Souzis could not remember what M.B. said would happen when she was at Father's home.

{¶11} A.B. is one of Father's older children. She frequently went with Father to pick up M.B. While M.B. was initially reluctant to attend visits, once she came, she had a good time and was excited to come. However, after Mother's Day, M.B. refused to visit. A.B. would get out of the car asking how M.B. was and if she wanted to come. The windows of M.B.'s car were rolled up and the doors were locked. M.B. and Mother would not speak to A.B. or Father, and M.B. would refuse to get out of the car.

{¶12} A.B. testified that, during a Christmas visit, M.B. had a great time. On summer visits, M.B. would swim in the pool and ride bikes. However, A.B. stated it seemed like when M.B. started having a good time, she suddenly would go inside by herself. A.B. believed M.B. would get in trouble with Mother if she had too much fun. It appeared to A.B. that M.B. felt she was not allowed to have a good time with Father. M.B. got along well with Father's other siblings.

{¶13} Ashley Brooks is Father's fiancée. She has been present at almost all of M.B.'s visits. Usually during the visits, M.B. plays and dances around. Several times, Brooks or Father texted or called Mother to ask if M.B. could visit early to go to COSI or on other trips, but Brooks never received a call or text back from Mother.

{¶14} During one visit when they were having a pool party, M.B. disappeared into the restroom, but told Father she was fine. M.B. called the police and told the police when they arrived that she was ready to go home. M.B. asked Brooks to bag up the pizza Brooks ordered for her to take home. M.B. went to a birthday party later that day. Brooks stated Father is playful, funny, attentive, and a supportive Father.

{¶15} Brooks called the police in 2016 during an argument with Father. She stated there was no violence and had nothing to do with any of the children.

{¶16} Father testified that visits with M.B. initially went very well. If Mother told him M.B. was sick, he was willing to make up the visit another day. However, since Mother's Day, Father has not visited with M.B., except when he met to give her Christmas gifts in a parking lot. Father invited Mother to his house for Christmas since M.B. stated she was scared. However, Mother would not come to his home, and instead they met in a parking lot so he could give M.B. her presents.

{¶17} Since Mother's Day, Father would show up to pick up M.B., and M.B. would not roll down the window or come out of the car. Father asked Mother to assist him, but Mother would not speak to Father. Father heard M.B. ask Mother, "what do you think?" when Father asked if she wanted to go get ice cream, or go to his house, but Mother did not respond. Some days, Mother just never showed up at the meeting place. Father has not had parenting time with M.B. since the week-end before Mother's Day of 2019. The last time he went to meet M.B., she refused to come with him, but rolled down the window to tell him she was changing her last name. Father testified that while he is not a perfect person, but he has never harmed M.B.

{¶18} Father testified that, in 2014, he pled no contest to a fourth-degree misdemeanor charge of domestic violence by threat when M.B. was three-and-a-half years old. Father admitted he did not show up at the meeting place in February of 2020 because he was out of town. Father has asked Mother for the information so he could talk to M.B.'s counselor or doctor, but Mother acted "like it's a big secret." Mother told him the counselor was at Ohio State, but he learned during the hearing that she was from Nationwide Children's.

{¶19} Debra Moore is Mother's aunt. She has been present at two parenting exchanges. M.B. did not want to go and was crying because she did not feel safe. The day would end with Mother going home with M.B. because M.B. stated she was not going with Father. Moore testified that Mother attempted to get M.B. to go with Father.

{¶20} The hearing was continued until August 18, 2020. Mother testified. When the visits first started in 2018, they mostly occurred, although Mother stated Father no-showed a few times. Mother stated that M.B. started playing football, and the games were at 1:00 on Sundays, during Father's parenting time. Mother testified that Father told her he still wanted parenting time, and if she didn't show up, he was filing a contempt motion. Mother stated, "instead, I took her to her football games." M.B. called the police twice during Father's parenting time, and then did not want to go at all.

{¶21} In 2019, Mother took M.B. to the emergency room because she had a severe panic attack after trying to do the parenting exchange. M.B. was not admitted to the hospital. Currently, M.B. does therapy weekly, and a psychiatrist sees her to prescribe medication. M.B. and Mother have tried to talk with Father about her issues, but Father tells M.B. that Mother is putting ideas in M.B.'s head.

{¶22} Mother testified that M.B. refuses to get out of the car, screams, and hovers down in the back seat when she attempts to take her to visits. Mother's position is that she cannot get M.B. to get out of the car to go with Father. Mother wants the visits to stop so M.B. can finish her therapy. However, Mother does not know how long that will take. Mother stated that M.B. remembers the violence against Mother by Father in 2014, when Father threatened to kill them and when Father's older child jumped on Mother's back. Mother testified M.B. has flashbacks of Father standing over M.B. with a knife, even though Mother acknowledged this never happened.

{¶23} Father asked Mother on cross-examination why Mother didn't have M.B. finish therapy since she has not gone on a visit with Father since July of 2019. Mother stated that seeing Father from the car on Sundays, even for two minutes, was a trigger for M.B. Mother has told M.B. to call the police if she does not feel safe with Father.

{¶24} The trial court issued a judgment entry on August 31, 2020, finding that Mother did not dispute that parenting time had been missed. The question was whether Mother had a legal defense to her failure to provide the minor child for Father's parenting time. The trial court noted the testimony by Souzis about M.B.'s post-traumatic stress disorder, but stated the counselor has received information only from Mother and M.B. The trial court noted that while the counselor stated she could not treat M.B. if parenting time was still taking place because M.B. identified Father as her trauma trigger, "no parenting time had been taking place in about a year, and [Mother] did not return to this counselor until only shortly before the last hearing."

{¶25} The trial court reviewed Father's evidence, including the testimony from him, his daughter, and his fiancée, that M.B. interacted well during the visits. The trial

court referenced a recording Mother presented of M.B. to demonstrate the child's reaction when she was asked to go with Father, and stated, "within a brief period of time listening to this recording it was obvious to the Court that this child was not evidencing trauma but was throwing a tantrum because she was not getting her way."

{¶26} The trial court found that, "either knowingly or unknowingly, [Mother] has played a significant role in the deteriorated relationship between M.B. and her father." While the trial court noted that a child exposed to domestic violence may have some ill effects, Mother presented "no evidence that [Father] presents such a serious risk of physical harm to M.B. that she should call for law enforcement assistance," particularly when one of the times she called law enforcement was when she was playing and having a great time before calmly going in to the house to call the police. The court found it "unsettling" that Mother has no ability to control M.B., a ten-year old child, and determined the child was given too much information, power, and control over the parenting time issue.

{¶27} The trial court also found that Father's demeanor and approach may be unsettling to a sensitive child, and encouraged him to consider this in his interactions with M.B.

{¶28} The trial court found Mother in contempt for her failure to comply with the previous parenting order of the court and found that she did not provide a legally sufficient defense for that failure. The court sentenced Mother to ten days in jail for the contempt, but issued the following purge conditions: parenting time to re-commence on October 4, 2020, and additional parenting time to be provided to Father by extending parenting time from 9:00 a.m. to 6:00 p.m. the first, second, third Sundays of each month; and seek and

retain an appropriate counselor to assist in the reunification between M.B. and Father. The trial court ordered this parenting time be exercised in the presence of other family members with whom M.B. has previously interacted and had a good relationship. The trial court also referred the case to the court's custody investigator to monitor the progress of the case.

{¶29} Mother appeals the judgment entry of the Muskingum County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶30} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT APPELLANT WAS IN CONTEMPT FOR DENYING PARENTING TIME TO THE APPELLEE."

I.

{¶31} Mother argues the trial court abused its discretion in finding her in contempt for denying Father parenting time with M.B.

{¶32} In this case, the trial court found Mother in contempt for violating its parenting time order by preventing Father from exercising parenting time with M.B. It is well-established that the failure to comply with a visitation order is proper grounds for a finding of contempt. *Sloat v. James*, 5th Dist. Stark No. 2008 CA 00048, 2009-Ohio-2849.

{¶33} "A court has authority both under R.C. 2705.02(A) and on the basis of its inherent powers to punish the disobedience of its orders with contempt proceedings." *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870 (1984). "The purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, and the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt." *Windham Bank v.*

*Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971). "It is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result." *Pedone v. Pedone*, 11 Ohio App.3d 164, 463 N.E.2d 656 (8th Dist. 1983).

{¶34} We review a contempt finding under an abuse of discretion standard. *Wadian v. Wadian*, 5th Dist. Stark No. 2007CA00125, 2008-Ohio-5009. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶35} In a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party violated an order of the court. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610 (1980). "Clear and convincing evidence" is evidence that will form a firm belief in the mind of the trier of fact as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale*, 58 Ohio St.3d 121, 568 N.E.2d 1222 (1991). Determination of clear and convincing evidence is within the discretion of the trier of fact. The trial court's decision should not be disturbed as against the manifest weight of the evidence if the decision is supported by some competent and credible evidence. *C.E. Morris Co. v. Foley Constr.* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. *Geary v. Geary*, 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259.

**{¶36}** Mother contends the record does not show Father met his burden of demonstrating, by clear and convincing evidence, that Mother violated the order of the court. We disagree. A.B. testified that she attended several attempted exchanges, and M.B. refused to get out of the car to go to Father's house for visitation. Father testified he has not had parenting time with M.B. since the week-end before Mother's Day of 2019. Mother admitted Father has not had parenting time since the week-end before Mother's Day. Accordingly, we find there is competent and credible evidence to support the trial court's determination that Father met his initial burden of proof that Mother violated the order of the trial court.

**{¶37}** Mother also argues the trial court abused its discretion in not finding that she had a defense to the denial of parenting time. A residential parent may have a defense in a contempt proceeding for interference with parenting time if he or she has a reasonable, good faith belief that he or she must deny visitation to protect the safety of the child. *Steele v. Steele*, 2nd Dist. Montgomery No. 25713, 2013-Ohio-3655.

**{¶38}** Mother specifically contends the trial court committed error in not properly considering the child's trauma, as testified to by the counselor. We disagree. The trial court did consider the counselor's testimony, but specifically noted that the counselor only received information from M.B. and Mother. Additionally, the trial court, as the trier of fact "is the sole judge of the weight of the evidence and the credibility of the witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest." *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 228 N.E.2d 304 (1967).

**{¶39}** We find there is competent and credible evidence to support the trial court's determination that Mother failed to meet her burden to prove she was justified in denying

visitation as provided for by the trial court. The testimony from the counselor focused on past trauma, occurring in 2014. In 2018, subsequent to the 2014 trauma, M.B. had good visits with Father, elected to go with him, and reported no issues to Mother. Additionally, despite the fact that M.B. did not see Father other than through a car window for over a year, Mother did not return her to counseling to conclude the process. Neither Mother, nor the counselor, could give the trial court a time-frame for the conclusion of M.B.'s therapy, or when they felt visitation could resume.

{¶40} There were no allegations or evidence in the record that M.B. has been abused or mistreated while in Father's care during his parenting time. While M.B. reported being anxious or stressed when going to visit Father to Souzis, Souzis could not recall what M.B. said was going on during the visits that caused anxiety or stress.

{¶41} A.B. testified that when she came for visits, M.B. had a good time, swimming in the pool, riding bikes, and playing with Father's other children. Brooks, who was present at almost all of M.B.'s visits, testified M.B. had a good time when she visited. Brooks stated that during one visit when M.B. called the police, they were having a pool party and M.B. asked Brooks to order her a pizza, but then M.B. calmly went into the house, called 911, and told them she wanted to go home. Father testified that the visits with M.B. initially went well; she had fun at his house and with his other children. He stated that M.B. would then not get out of the car, and Mother refused to speak to him or assist him in getting M.B. out of the car.

{¶42} Mother's testimony and argument was that she could not get M.B. to get out of the car and go with Father. The trial court found this was not sufficient to meet her burden to prove she was justified in denying visitation. Based on the standards of review

as cited above and the evidence presented, we cannot say the trial court abused its discretion in this determination. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶43} We find the trial court did not abuse its discretion in finding Mother in contempt. After considering the testimony presented, the trial court did not find Mother's explanation for her non-compliance with the court's visitation sufficient to establish extraordinary circumstances. Based on our standard of review and the evidence presented, we do not find the trial court's decision to be arbitrary, unconscionable, or unreasonable.

{¶44} Mother's assignment of error is overruled.

{¶45} The August 31, 2020 judgment entry of the Muskingum County Court of Common Pleas, Domestic Relations Division, is affirmed.

By Gwin, J.,

Baldwin, P. J., and

Wise, John, J., concur