**[Cite as *Eberly v. Eberly*, 2026-Ohio-2262.]**

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
DELAWARE COUNTY, OHIO

| | |
|---|---|
| CAROLYN A. EBERLY | Case Nos. 25 CAF 04 0031 & 25 CAF 04 0032 |
| Plaintiff-Appellee/Cross-Appellant | |
| | Opinion and Judgment Entry |
| -vs- | |
| | Appeal from the Delaware County Court of Common Pleas, Case No. 22 DR B 10 0615 |
| RONALD M. EBERLY, JR. | |
| Defendant-Appellant/Cross-Appellee | Judgment: Affirmed |
| | Date of Judgment Entry: June 15, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Robert G. Montgomery, Judges

**APPEARANCES:** Eimear M. Bahnson, Alyson B. Miller, Brianna J. Walsh, Miller Brahnson Law, LLC for Plaintiff-Appellee/Cross-Appellant; Joanne S. Beasy, Dale D. Cook, Stephanie P. Hunter, Isaac, Wiles, Burkholder & Miller, LLC for Defendant-Appellant/Cross-Appellee.

*Hoffman, J.*

{¶1} Defendant-Appellant/Cross-Appellee Ronald M. Eberly, Jr. (hereinafter "Husband") and Plaintiff-Appellee/Cross-Appellant Carolyn A. Eberly (hereinafter "Wife") both appeal the judgment entered by the Delaware County Common Pleas Court, Domestic Relations Division, granting Wife a divorce from Husband, awarding Husband spousal support, and dividing marital property.

STATEMENT OF THE FACTS AND CASE

{¶2} The parties were married on October 20, 1990, and two children were born as issue of the marriage. Both children are now emancipated. Wife filed a complaint for divorce on October 5, 2022. Husband answered the complaint but did not file a counterclaim for divorce.

{¶3} The parties entered into numerous stipulations regarding the value and division of marital property. The remaining issues concerning division of property, spousal support, and pending motions were tried to the court. Relevant to this appeal, the trial court ordered Wife to pay Husband spousal support in the amount of $5,500 per month for thirteen years, starting April 1, 2025. The trial court reserved jurisdiction to modify the amount, duration, and terms of spousal support. Spousal support was ordered to terminate upon the death of either party, the remarriage of Husband, the final support payment, or further order of the court.

{¶4} The trial court overruled Husband's motion to hold Wife in contempt for canceling the insurance on a 2020 Range Rover, which Husband alleged was in violation of the agreed-upon temporary order. The trial court found there was no violation of the temporary order, and further found Husband came before the court with unclean hands.

{¶5} The trial court found Oakwood, LLC was Wife's separate property and found a Chase checking account in Wife's name to be marital property, subject to equal division.

{¶6} It is from the March 31, 2025, judgment of the trial court both parties prosecute their appeals. Husband's appeal was assigned case number 25CAF040031. Wife's appeal was assigned case number 23CAF040032. This Court consolidated the appeals and ordered they be treated as appeal and cross-appeal, with Husband's appeal designated as the appeal and Wife's appeal designated as cross-appeal.

**{¶7}** Husband assigns four errors on appeal:

I. WITH A 33-YEAR MARRIAGE, THE TRIAL COURT ABUSED ITS DISCRETION IN ARBITRARILY LIMITING SPOUSAL SUPPORT TO 13 YEARS.

II. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ONLY $5,500.00 PER MONTH SPOUSAL SUPPORT, CONSIDERING CAROLYN EBERLY'S SIGNIFICANTLY HIGHER INCOME, EARNING CAPACITY, AND HUGE PASSIVE INCOME STREAM AND IN THE ABSENCE OF A REASONABLE EXPLANATION FOR THE AWARD.

III. THE TRIAL COURT ERRED IN FAILING TO HOLD CAROLYN IN CONTEMPT FOR CANCELING THE INSURANCE ON THE 2020 RANGE ROVER IN VIOLATION OF THE AGREED TEMPORARY ORDER.

IV. THE TRIAL COURT HOLDING THAT OAKWOOD, LLC WAS NOT MARITAL PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶8}** Wife assigns three errors on cross-appeal:

I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ISSUING AN INEQUITABLE SPOUSAL SUPPORT ORDER THAT, IN ITS DURATION, SCOPE, AND EFFECT, OPERATED INDEFINITELY, WAS RETROACTIVE WITHOUT CREDIT AS TO THE DURATION, IMPOSED

AN EXCESSIVE TERM, AND FAILED TO TERMINATE UPON APPELLANT'S COHABITATION.

II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN CALCULATING SPOUSAL SUPPORT BY INCLUDING A DISTRIBUTION FROM RIEHL LEGACY PROPERTIES, APPELLEE/CROSS-APPELLANT'S SEPARATE, INHERITED PROPERTY, AS A PART OF HER INCOME CONTRARY TO R.C. 3105.171(A)(6)(a)(i).

III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT APPELLEE/CROSS-APPELLANT'S INDIVIDUAL CHASE CHECKING ACCOUNT ENDING IN x3708 WAS MARITAL PROPERTY SUBJECT TO EQUAL DIVISION, DESPITE EVIDENCE THAT THE ACCOUNT PRIMARILY CONTAINED APPELLEE/CROSS-APPELLANT'S TRACEABLE, SEPARATE PROPERTY.

**{¶9}** We first address Husband's assignments of error on direct appeal.

I., II.

**{¶10}** In his first and second assignments of error, Husband argues the trial court abused its discretion in failing to order indefinite spousal support based on the long duration of the marriage, and in ordering an inadequate amount of spousal support given the disparity in income between the parties. Husband argues the trial court failed to adequately explain its reasoning in choosing the duration and amount of spousal support. We disagree.

**{¶11}** A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

**{¶12}** R.C. 3105.18(C)(1) sets forth the factors a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶13} The goal of spousal support is to reach an equitable result. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96 (1988). Although there is no set mathematical formula to reach this goal, the Ohio Supreme Court requires the trial court to consider all fourteen factors of R.C. 3105.18(C) and "not base its determination upon any one of those factors taken in isolation." *Id*. The trial court must only set forth sufficient detail to enable a reviewing court to determine the appropriateness of the award. *Id*.

{¶14} In the instant case, the trial court discussed each of the factors in its judgment entry. The trial court found Wife's income, both from her salary and her passive

income, to be $645,165. The trial court found Husband's income to be $296,499. The trial court found the Wife's earning ability to be higher than Husband's. As of the date of trial, Wife was 56 years old and Husband was 57 years old, and both were in good physical, mental and emotional health. The parties had retirement accounts totaling $3 million, which the trial court divided equally, as well as assets in the amount of $11.5 million, also divided equally.

{¶15} Husband argued at oral argument pursuant to this Court's decision in *Hutta v. Hutta,* 2008-Ohio-3756 (5th Dist.), the trial court was required to provide an explanation in order to limit spousal support to thirteen years following a long-term marriage and in order to award an amount of less than an equalization of income. We disagree. *Hutta* presented a different factual scenario than the instant case. In *Hutta*, this Court recognized the trial court is only required to provide an explanation sufficient to allow this Court to review the decision, and we further recognized the trial court was not mandated to order spousal support of an indefinite duration based on the long-term nature of the marriage. However, in *Hutta*, the trial court's award provided a gap in income to the wife, without explanation:

> However, under the financial facts and circumstances of this case, and being mindful of the purpose of spousal support, we are persuaded that the trial court abused its discretion in limiting spousal support duration to eight years without any stated justification. At the time of divorce, Appellant was age 49. Thus, spousal support would terminate at age 57. The evidence reflected an unlikelihood Appellant could develop a meaningful career outside the home and she would be unable to access retirement accounts

until age 59 1/2 or social security benefits at age 62. Thus, there exists a gap of at least one and a half years to five years when Appellant would be without support maintenance before she reaches retirement age. Appellee certainly has the resources and ability to provide continued support until Appellant could achieve retirement age. The record simply does not support the trial court's determination that eight years was reasonable and nor does it provide insight to support the trial court's reasoning in this regard.

**{¶16}** *Id*. at ¶ 41.

**{¶17}** Nothing in *Hutta* requires the trial court in every case to explain its decision regarding the amount or duration of spousal support. In the instant case, Husband will receive spousal support until he is approximately 70 years of age, and he received an equal division of the retirement savings of the parties. Further, unlike the wife in *Hutta*, Husband in the instant case has substantial income and earning ability.

**{¶18}** Husband argues the amount of spousal support is inequitable because of Wife's high income. Although there is no prohibition against the equalization of incomes in an appropriate case, income equalization is not a factor which must be considered under R.C. 3105.18(C)(1). *Walpole v. Walpole,* 2013-Ohio-3529, ¶ 23. In the instant case, Husband had significant income of his own and received over $5 million in assets. We find the trial court did not abuse its discretion by failing to equalize income in its spousal support award.

**{¶19}** Based on the trial court's consideration of all of the statutory factors, we find the trial court did not abuse its discretion in the duration and amount of spousal support.

**{¶20}** The first and second assignments of error are overruled.

## III.

**{¶21}** In his third assignment of error, Husband argues the trial court erred in failing to find Wife in contempt for canceling the insurance on his 2020 Range Rover. We disagree.

**{¶22}** In a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party violated an order of the court. *Brown v. Executive 200, Inc.,* 64 Ohio St.2d 250 (1980). "Clear and convincing evidence" is evidence that will form a firm belief in the mind of the trier of fact as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale*, 58 Ohio St.3d 121 (1991). Determination of clear and convincing evidence is within the discretion of the trier of fact. *Brennan v. Brennan,* 2021-Ohio-1865, ¶ 35. A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. *Id.*

**{¶23}** Pursuant to the agreed temporary order of the court, the parties agreed to a reciprocal transfer of titles regarding the 2016 and 2020 Range Rovers for the purpose of using the vehicles for trade-in value on the purchase of their next vehicles. Wife was to transfer title of the 2016 Range Rover to Husband, and Husband was to transfer title to the 2020 Range Rover to Wife.

**{¶24}** Husband argues Wife violated Paragraph 3(e) of the Agreed Temporary Order, which provides:

> 3. Effective March 1, 2023, the debts and obligations of the parties
> shall be paid as follows:

e. The parties shall pay all other individual expenses, including, but not limited to credit cards, automobile payments and insurance, household expenses, from his or her individual bank account or individual credit card accounts or checking/savings account for their individual expenses.

**{¶25}** The trial court first found the Wife's cancellation of the insurance on the 2020 Range Rover was not in violation of the agreement. The agreement required each party to pay their individual expenses, including automobile payments and insurance, from his or her individual bank account and not the joint accounts. Husband argues pursuant to this agreement, Wife was not permitted to cancel insurance on the Range Rover. The trial court disagreed:

Husband's interpretation of the Agreed Temporary Order considers phrases in isolation of the entire paragraph, i.e., "[t]he parties shall pay all other individual expenses, including *** automobile payments and insurance ***." However, reading paragraph (e) of the Agreed Temporary Order in its entirety reflects that this paragraph governs the payment of individual expenses from the parties' individual accounts, and not their joint accounts. Paragraph 3(e) does not speak solely to the responsibility of paying for automobile insurance. Thereby, a violation of paragraph 3(e) of the Agreed Protection Order entails the payment of the individual expenses from the parties' joint accounts, and not simply a failure and/or refusal to pay her individual expense of automobile insurance. Accordingly, Wife's cancelation of the automobile insurance and refusal to reinstate the

insurance on the 2020 Range Rover is not a violation of paragraph 3(e) of the Agreed Temporary Order.

**{¶26}** Judgment Entry, 3/31/25, p. 73.

**{¶27}** We agree with the trial court's interpretation of the agreement. Paragraph 3(e) is not designed to set forth specific obligations and responsibilities with regard to the insurance on the Range Rover but is intended to prohibit the use of marital funds for individual expenses during the pendency of the divorce. The language of the temporary order did not prohibit Wife from canceling the insurance on the 2020 Range Rover, but it prevented her from paying for the insurance out of marital funds.

**{¶28}** The trial court further found Husband did not come into court with clean hands, having failed to transfer the title to the 2020 Range Rover to Wife when he had the ability to do so, thereby eliminating her ability to use the vehicle as a trade-in as intended by the parties in fashioning the agreement for the vehicle exchange. Husband argues the trial court could not legally apply the doctrine of unclean hands to a contempt proceeding where Wife had other means to enforce his refusal to transfer the title by filing her own contempt motion. *Gardner v. Bisciotti*, 2010-Ohio-5875, ¶ 19 (10th Dist.). Because we have found the trial court did not err in its interpretation of the agreement, we need not reach this argument.

**{¶29}** The third assignment of error is overruled.

IV.

**{¶30}** In his fourth assignment of error, Husband argues the trial court's finding Oakwood, LLC was Wife's separate property is against the manifest weight of the evidence. We disagree.

**{¶31}** The characterization of property as separate or marital is a mixed question of law and fact. *Howcroft v. Howcroft*, 2010-Ohio-6410, ¶57 ((5th Dist.). "A party who wants an asset classified as separate property bears the burden of tracing that asset to his or her separate property." *Gregory v. Falcon*, 2023-Ohio-1741, ¶36 (5th Dist.). This Court will not disturb the trial court's ruling as being against the manifest weight of the evidence if some competent, credible evidence supports the trial court's judgment. *Howcroft* at ¶57, *citing C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). In reviewing a claim a judgment is against the manifest weight of the evidence, the appellate court is to be "guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co. v. Cleveland*, 10 Ohio St. 3d 77, 80 (1984). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

**{¶32}** R.C. 3105.171(A) provides in pertinent part:

(3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement

benefits of the spouses, and that was acquired by either or both of the spouse during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both spouses that occurred during the marriage;

\* \*

(b) "Marital property" does not include any separate property.

\* \*

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

\* \*

(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iv) Passive income and appreciation acquired from separate property by one spouse during the marriage;

* *

(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.

{¶33} Husband argues his testimony at trial established despite the fact Oakwood, LLC was property gifted to Wife by her parents, the income from the property was commingled with marital property, and he was involved with the decision-making process regarding the use of the property.

{¶34} The trial court made extensive findings in support of its conclusion the property was Wife's separate property. The trial court correctly noted the co-mingling of distributions from Oakwood, LLC with marital property does not convert the property itself to separate property and does not convert future distributions from Wife's separate property to marital property. *See* R.C. 3105.171(A)(6)(b).

{¶35} The trial court made the following findings regarding Husband's testimony concerning his involvement in the decision-making process of Oakwood, LLC:

Oakwood LLC held a 25 percent ownership in Danbury of Cuyahoga Falls. Pl.'s Ex. 38. Husband testified that he assisted Wife's father with "background leg work" to get Danbury of Cuyahoga Falls running as an assisted living facility. Husband did not testify or provide any evidence as to the amount of appreciation or income his work generated for Oakwood LLC. On the contrary, Husband testified that Danbury of Cuyahoga Falls was a bad investment. The testimony and evidence from both parties'

experts reflected that Danbury of Cuyahoga Falls had been operating at a loss from 2020 to 2023 and those losses had decreased Oakwood LLC's income. Danbury of Cuyahoga Falls was sold in March or April 2023. The experts opined and Wife's father confirmed that Oakwood LLC's income increased following the sale of Danbury of Cuyahoga Falls. Accordingly, Husband has failed to demonstrate that his work related to Danbury of Cuyahoga Falls caused the value of Oakwood LLC to increase or earn income.

{¶36} Judgment Entry, 3/31/2025, p. 39-40.

{¶37} The trial court judged the credibility of witnesses, considered the lack of documentary evidence to support Husband's claim, and determined Husband did not contribute to Oakwood LLC in a manner which increased the value or income of Oakwood LLC. The trial court therefore concluded Oakwood LLC was not marital property as defined by R.C. 3105.171(A)(3)(a)(iii). We find the judgment is not against the manifest weight of the evidence.

{¶38} The fourth assignment of error is overruled.

{¶39} We next turn to Wife's assignments of error on cross-appeal.

Cross-Appeal I.

{¶40} Wife argues the trial court abused its discretion in both the duration and scope of spousal support. She specifically argues the award is in effect indefinite in duration, extends past her retirement date, does not account for Husband's substantial earning capacity, did not give her credit for the increase in the amount of temporary spousal support, and did not terminate on Husband's cohabitation. We disagree.

{¶41} This Court's standard of review and the law applicable to an award of spousal support is set forth earlier in this opinion in our discussion of Husband's first and second assignments of error.

{¶42} Contra to Wife's argument, it is clear the award is for a definite term of thirteen years:

Having considered the factors in R.C. 3105.18(C)(1), the Court finds it to be reasonable and appropriate that Wife pay spousal support to Husband in the amount of $5,500 per month for 13 years, commencing April 1, 2025. The Court reserves jurisdiction to modify the amount, duration, and terms of the spousal support. Spousal support shall terminate upon the death of either party, the remarriage of Ronald Eberly, Jr., the final spousal support payment, or further order of the court.

{¶43} Judgment Entry, 3/31/25, p. 68.

{¶44} The fact the trial court retained jurisdiction to modify the duration of spousal support does not render the support order indefinite in duration; in fact, the trial court's retention of jurisdiction could result in a shorter duration than thirteen years. In

the absence of the death of either party, the remarriage of Husband, or further order of the court, spousal support will terminate upon the payment of the final payment by Wife, thirteen years after April 1, 2025. We find the order is not indefinite in duration.

{¶45} Although the order does potentially extend past Wife's retirement, a substantial portion of Wife's income is passive in nature. Further, the trial court retained jurisdiction to modify the award, and Wife therefore has the ability to seek modification should her income decrease due to retirement before the termination of the order.

{¶46} We also find the trial court considered Husband's earned income, education, and professional certifications when fashioning the support award. The trial court made a finding Husband's income in 2024 was $296,499, and noted Husband's income fluctuates based on real estate market conditions, interest rates and the state of the economy. Again, Wife can seek a modification in the event Husband's income increases substantially, and we find no abuse of discretion in the amount of spousal support.

{¶47} Wife also argues the trial court abused its discretion in failing to automatically terminate spousal support upon Husband's cohabitation.

{¶48} The purpose of spousal support is to provide for the financial needs of an ex-spouse. *Thomas v. Thomas*, 76 Ohio App.3d 482, 485 (10th Dist. 1991). If the ex-spouse is living with another person, and that person provides financial support or is being supported by the spousal support recipient, then the underlying need for spousal support is reduced or does not exist. *Id.*

{¶49} "Cohabitation" has been defined as the sharing of familial or financial responsibilities combined with consortium of the persons involved. *Coe v. Coe*, 2004-Ohio-3845 (9th Dist.). Hence, the essential elements of cohabitation are: (1) sharing of

family or financial responsibilities and (2) consortium. *State v. Williams*, 79 Ohio St.3d 459, 465 (1997).

{¶50} We find the trial court did not abuse its discretion in failing to automatically terminate spousal support upon Husband's cohabitation. The trial court retained jurisdiction to modify the spousal support award. Thus, Wife has the ability to seek a modification or termination of the award in the event of cohabitation.

{¶51} Wife also argues the trial court erred in modifying temporary spousal support to $5,500 a month retroactive to May 1, 2024, while beginning her obligation under the permanent order on April 1, 2025. She argues she should be given credit toward permanent support for the time in which she is retroactively paying an increased amount of temporary support. We disagree.

{¶52} Based on increased income of Wife, the trial court modified the temporary support order to $5,500 per month retroactive to May 1, 2024. The trial court found the total increased amount due above the amount Wife previously paid Husband under the temporary support order to be $28,875, to be subtracted from an equalization payment due to Wife.

{¶53} "Temporary spousal support is the support awarded during the pendency of any divorce proceeding[.]" *Saks v. Riga*, 2014-Ohio-4930, ¶ 85 (8th Dist.). Its purpose is to maintain the status quo. *Lichtenstein v. Lichtenstein*, 2023-Ohio-3355, ¶ 78 (8th Dist.). "Permanent spousal support," by contrast, "is the support awarded after the court determines the division or disbursement of property under R.C. 3105.171." *Saks* at ¶ 85. "The purpose of permanent spousal support differs from that of temporary spousal support" in that permanent support is designed to reach an equitable result. *S.M. v. A.P.*, 2025-Ohio-2985, ¶ 58 (8th Dist.).

**{¶54}** Temporary spousal support is different in purpose than permanent spousal support, and we find the trial court did not abuse its discretion in failing to credit the time period during which Wife paid an increased amount of temporary spousal support to the duration of Wife's permanent spousal support obligation. Clearly, the trial court intended permanent support to run for thirteen years from April 1, 2025, which is roughly the date of the March 31, 2025 judgment entry of divorce, and we find no abuse of discretion in the court's order.

**{¶55}** The first assignment of error on cross-appeal is overruled.

Cross-Appeal II.

**{¶56}** In her second assignment of error, Wife argues the trial court erred in including her distribution from Riehl Legacy Properties as income for purposes of calculating spousal support. We disagree.

**{¶57}** Wife argues Riehl was separate property and the distribution of income from the property was a one-time, non-recurring event.

**{¶58}** R.C. 3105.18(C)(1)(a) provides in determining spousal support, one of the factors a court should consider is "[t]he income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code." The language of R.C. 3105.18(C)(1)(a) clearly and unambiguously states the trial court is to consider all sources of income, including property deemed to be separate property under R.C. 3105.171, in deciding whether to award spousal support and, if awarded, in deciding the nature, amount, duration, and terms of payment of that award. *See, e.g., King v. King,* 2019-Ohio-1561, ¶ 18 (6th Dist.). We find the trial court did not err in including Wife's income from Riehl Legacy Properties in determining spousal support based on its nature as separate property.

**{¶59}** Wife also argues the distribution of $97,500 she received from Riehl in 2024 should not be considered as income because it is not recurring in nature. At trial, Wife's father testified as follows regarding income from Riehl:

> Q. Bill, with respect to the Riehl Properties – Riehl Legacy Properties – sorry – we talked about there being a distribution in early 2024 to both Carolyn and you and presumably your granddaughters. Do you know if there have been other distributions made since March of 2024?
>
> A. Yes, there was a distribution made probably late July, early August, representing the second quarter operations of 2024.
>
> Q. Okay. So late July, early August you said?
>
> A. Correct.
>
> * * * *
>
> Q. And do you anticipate getting a distribution from the Riehl Legacies property after every quarter?
>
> A. That would be our hope, yes.
>
> Q. And are those properties operating at a success, to the best of your knowledge?
>
> A. They are.

**{¶60}** Tr. 349-351.

**{¶61}** From this testimony, we find the trial court did not abuse its discretion in including Wife's Riehl distribution as income for purposes of spousal support. Wife's father's testimony demonstrated an early pattern of quarterly payments had begun, and

such payments would hopefully continue.  The properties were successful at the time of trial, an indication quarterly payments would most likely continue.  Further, the trial court reserved jurisdiction over spousal support, and if the payments do not continue to Wife, she has the ability to petition the trial court for a reduction in support.

**{¶62}** The second assignment of error on cross-appeal is overruled.

Cross-Appeal III.

**{¶63}** In her third assignment of error, Wife argues the trial court erred in finding her checking account ending in x3708 to be marital property.  We disagree.

**{¶64}** This Court's standard of review and the law applicable to the classification of property as separate or marital is set forth in our discussion of Husband's fourth assignment of error.

**{¶65}** Wife argues she provided evidence to trace the funds in the checking account to identifiable sources of inheritance, reimbursements, and pre-decree real estate proceeds.  She argues by classifying the checking account as marital property, the trial court awarded Husband a second portion of funds previously divided after the sale of the marital residence and diluted her separate inheritance.

**{¶66}** The trial court made the following finding regarding the checking account in question:

> The comingling of separate property with marital property does not destroy its identity unless the separate property is not traceable.  R.C. 3105.171(A)(6)(b).  Wife comingled marital property (money from a marital bank account, pay checks, bonus checks, consignment payments, State Farm, unidentified deposits, and distributions from Riehl Legacy

Properties), her pre-decree distribution of the proceeds of the marital home, and separate property (distributions from Oakwood Square Investments, LLC, inheritance money from her mother, funds from her mother's estate and trust, and reimbursements for expenses of her mother's estate and burial) in her Chase Individual Checking account (x3708) and used all of these funds to pay for marital expenses and separate expenses. *See* Pl.'s Ex. 18. Despite Wife's intent to use her Chase Individual Checking account (x3708) for her own expenses, she nonetheless deposited marital funds and withdrew money for marital purposes.

Wife did not provide any testimony or evidence tracing which of the remaining comingled deposits were used to pay marital expenses versus separate expenses. There is no evidence as to what percentage or amount of separate funds or her pre-decree distribution, if any, is a part of the $182,320 balance in her Chase Individual Checking account (x3708).

Due to Wife's failure to trace the June 30, 2024 balance of $182,320 in her Chas Individual Checking account (x3708) to her separate property, the Court finds this asset to be marital property. Further, the Court finds it to be fair and equitable to equally divide the June 30, 2024 balance of $182,320 in Wife's Chase Individual Checking account (x3708). After said transfer, Wife shall have as her own property, free and clear of all claims of Husband, the remaining balance of her Chase Individual Checking account (x3708).

**{¶67}** Judgment Entry, 3/31/25, pp. 34-35.

**{¶68}** Wife argues she provided testimony and documentary evidence regarding which deposits to the account were separate property, and thus those deposits remain traceable. We disagree. As noted by the trial court, although she could identify the deposits which were separate property, these deposits were commingled with marital funds and then used to pay both separate and marital expenses. Therefore, the trial court could not determine whether the funds remaining in the account were separate funds, marital funds, or a combination of the two. We find the trial court did not err in concluding Wife could not trace the funds remaining in the account as her separate property.

**{¶69}** The third assignment of error on cross-appeal is overruled.

**{¶70}** The judgment of the Delaware Common Pleas Court, Domestic Relations Division, is affirmed. Costs of the appeal are assessed to Husband.

**{¶71}** Costs of the cross-appeal are assessed to Wife.

By: Hoffman, J.

King, P.J. and

Montgomery, J. concur.